ISABELLA SELEY, RESPONDENT, *v.* SOUTHERN PA-
CIFIC COMPANY, APPELLANT.

MASTER AND SERVANT.—NEGLIGENCE.—APPLIANCES.—It is negli-
gence in a railroad company to use open frogs in its track, that
are dangerous to employees from a likelihood to catch the feet
of those coupling cars, when experience has shown that safety
frogs are safer and more suitable, and that their use removes
hazards and preserves the lives of employees engaged in danger-
ous employments.

ID.—ID.—ASSUMPTION OF RISKS.—The employer does not insure the
deceased against injury from the dangerous agencies which it
necessarily employs, and the servant assumes the ordinary
risks incident to his employment. But the servant does 'not
assume the risks arising from the master's negligence, and since
the master was guilty of negligence in not using safety frogs, a
reasonable appliance for the safety of the servant, the risk
arising from that negligence is not one of the ordinary risks of
the servant's employment.

ID.—ID.—CONTRIBUTORY NEGLIGENCE.— The duties of a conductor
of a freight train being general, and he being expected to get
his train through on time, if for this reason he assists in switch-
ing and coupling, the conductor is authorized, when time has
been lost in two unsuccessful attempts to couple cars, and when
the conductor had been a conductor for seven years and a
brakeman some years before that, to attempt to make the
coupling himself.

ID.—ID.—ID.—KNOWLEDGE OF DANGER.—Imminent danger from a
defect in a machine or other instrumentalities, which could be
remedied or removed by reasonable means, is not like those
dangers that are less threatening, and which a reasonable man
might think he could avoid injury from by a high degree of
care. In the latter case the master is liable for resulting injury,
although the employee has not informed him of the danger, nor
has exacted a promise to repair.

ID.—ID.—CONTRIBUTORY NEGLIGENCE.—QUESTION FOR THE JURY.—
Where it appeared that a freight conductor, his train being late,
after several unsuccessful attempts by a brakeman to couple
cars, himself attempted it, and failed the first time, and trying it
again, his foot was caught in an open frog and he was killed,
*held* that it was a proper question to submit to the jury whether
the servant, at the precise moment, was guilty of a want of
reasonable care, in not remembering the open frog.

APPEAL from a judgment of the district court of the first district and from an order refusing a new trial. The opinion states the facts.

*Messrs. Marshall and Royle* for the appellant.

*Mr. E. M. Allison, Jr.,* and *Messrs. Kimball and White* for the respondent.

ZANE, C. J.:

This action was instituted by the administratrix of the estate of the late William H. Seley, to recover damages to his widow and children in consequence of his death, occasioned, as alleged, by the negligence of the appellant. The deceased was employed by the appellant as a conductor on its freight train, and while endeavoring to make a coupling at Wells, a station in Nevada, one of his feet became fastened in an open frog, and he was run over by a car and killed.

It appears from the evidence that blocked or cast-iron frogs are used in many tracks. In these the point of the space between the rails is filled with wood or other material, so that the foot will not be held. The block is a simple device, practicable and inexpensive, and prevents the danger. It is called a "safety block." There were six or seven tracks at Wells, and three frogs, and at such a place couplings are required to be made promptly, at all times of the day and night, and the exclusive attention is necessarily directed to the coupling. The individual, at such times, cannot act with deliberation, and his eye, as well as his attention, is necessarily drawn to the coupling. Open frogs, in which the foot is liable to be caught, and from which a release is difficult without more time than a man has when making a coupling, necessarily add to his hazards. The safety block has been in use for years past. It is a simple device for the protection of employees engaged in a very hazardous employment. It is no longer an experiment. It is said that the employer is not bound to employ the latest improvements in machinery; that he is only required to see that the instrumentalities he does

use are safe and suitable.   An old machine or device may have been considered safe and suitable, as compared with old machines or devices, but, as compared with newer and more perfect ones, it may not be considered safe or suitable; for the human mind is ever engaged with new inventions, and human ingenuity, with wider experience, additional skill, and with ceaseless energy, removes old impediments and dangers in perfecting the old, as well as by inventing the new.   While a railway company is not required to experiment with novel inventions alleged to be safer and more suitable, yet, when experience has demonstrated that their use does remove hazards, and preserves the lives of their employees engaged in dangerous employments, prudence, as well as humanity, demands that such new agencies shall be used.   Such companies have no right to continue to employ such dangerous and destructive agencies as wound and kill their employees, when safer and better ones are in use.   We are of the opinion that the appellant was guilty of negligence in using the open frog.

It is said that the defendant did not insure the deceased against injury from the dangerous agencies which it necessarily employed, and that he assumed the ordinary risks incident to his employment.   While this is so, the deceased did not assume the risks from defendant's negligence.   Ordinary risks are such as remain after the employer has used all reasonable means to prevent them.   The ordinary risks of an employment differ from the risks from the employer's negligence.   The injuries resulting to the employee from the ordinary risks of his employment he must bear, but those that come to him alone from the employer's negligence the latter must bear.   In not using the safety block, the appellant neglected a reasonable means to prevent injury to his employees in making couplings, and if the deceased, without his fault, lost his life from that neglect, the defendant must pay his wife and children their loss; the defendant must bear it.

It is claimed that the deceased, as conductor, was not authorized to couple cars, and that, therefore, the defendant is not liable.   It appears from the evidence that the

conductor of a freight train is expected to use all diligence to get his train through on time, and that in so doing he assists in switching and making couplings, if he deem it necessary. His duties are somewhat general. It appears from the evidence that Seley's train had come into the station late, and that one of the brakemen had made two attempts to couple a car on, and had failed, and that the other brakeman had failed once; that five or ten minutes had been lost in these attempts; and that the deceased, who had been conductor about seven years, and brakeman a number of years before that, then said he believed he could make it, and then made the effort. Under these circumstances, as a diligent and faithful freight conductor, we think he was authorized by the terms of his employment to make the effort. To have stood by under such circumstances, without bringing to bear his experience and skill, might have been regarded as an indication of indifference, and a lack of zeal in his employer' business.

It is also said the deceased ought to have informed his employer of the open frogs in use in its track, and that they were dangerous, and to have exacted a promise to repair in a reasonable time; and without such a promise, or in case of a failure to comply with it if made, he should have left the appellant's employ. No notice was necessary, because the deceased had no right to assume that his employer was ignorant of the open frogs in its track. He must have known that the company had failed to employ the safety block for fifteen or twenty years. He had been brakeman and conductor on its road for the greater part of that time. Nor do we think that the deceased assumed the risk from the open frog by entering the defendant's employ with it in use, or by continuing in such employ after he knew the safety block would remove its perils. Imminent danger from a defect in a machine or other instrumentalities, which could be remedied or removed by reasonable and practicable means, is not like those dangers that are less threatening, and which a reasonable man might think he could avoid injury from by a high degree of care. Ordinarily, the duties of a conductor do not expose him to the perils from open frogs. In the discharge of the

duties of his employment he does not usually feel called upon to assist in switching or coupling cars, and, if his attention should be directed to the dangers from the open frog, he might reasonably conclude that he would not very often, if ever, be exposed to its hazards in making couplings over it.   In the case of *Patterson* v. *Railroad Co.*, 76 Pa. St. 389, the Court said: "If the instrumentality by which he is required to perform his service is so obviously and immediately dangerous that a man of common prudence would refuse to use it, the master can not be held responsible for the resulting damages.   *   *   *   But where the servant, in obedience to the requirement of the master, incurs the risk of machinery which, though dangerous, is not so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill, the rule is different.   In such case the master is liable for a resulting accident."

It is also claimed that the negligence of the deceased caused or contributed to his death, and that, therefore, the defendant is not liable.   One of the brakemen testified that they came into Wells behind time, and that he made two attempts to couple the car on to the train, and the other brakeman made one; that the deceased then said that he believed that he could make it, and went in and failed; that the link was too short; that he said to the deceased that his foot was in the frog; the deceased then took it out, and stepped out beside the track; that witness then got a longer link, and the deceased again went in to make the coupling, and the toe of his shoe caught in a frog, and the deceased was run over and killed.   Witness further said there were about five minutes between the time the deceased came out and the time he went in again and was killed.   The fireman who was managing the engine at th time testified that when the train backed down to couple on to the cars, one of the brakemen tried to make the coupling, but failed; then the other brakeman stepped in, and he failed, but still signaled to back up, and went in a second time, and as he came out the conductor came up, and the signal was given again to back up, and he stepped in between the cars, and then stepped out, and walked

down in the same direction the train was moving, giving signals all the time to come back. He walked fifteen feet probably, and stepped in again, and the witness saw no more of him till after he was run over. It would seem from the brakeman's testimony that the deceased made his second attempt at the same place he made the first, and that the toe of his shoe caught in the same frog that the brakeman told him to take his foot out of. He says about five minutes intervened between the two attempts, and it appears that the cars to be coupled were moved at each attempt, and the inference from the fireman's testimony is that the place of the second attempt of the deceased was about fifteen feet from the place of the first. If so, the statement of the brakeman that the deceased placed his foot in a frog when making his first attempt may not be correct.

The evidence shows but three frogs—two at one place, and one at another—and their distance apart does not correspond with the distance between the places where the two attempts were made. This evidence presented a conflict for the jurors to consider, and reconcile if they could, and, in case they could not, to determine whom they would believe. The deceased had been conductor several years, and before that he was a brakeman. He had experience, and probably possessed skill, as a car-coupler, and it was his duty to get his train through, and he was behind time, and was still delayed with the coupling. Under these circumstances he made his last effort. At the time, his attention must have been directed to the link he was endeavoring to manipulate, and to the movement of the cars, not to where he was stepping. In moving his feet, under these circumstances, he did not raise one of them high enough, and the toe of his shoe caught in the frog. The jury must have found that he used due care, and that his negligence did not contribute to the fatal injury. The jury were not required to test the conduct of the deceased by some imaginary standard requiring unusual care. He was only required to exercise ordinary care, such as might be reasonably expected of experienced brakemen under similar circumstances. The Court below overruled the de-

fendant's motion for a new trial, and entered judgment on the verdict.

It was within the province of the jury to reconcile the statements of the witnesses, so far as they could on any reasonable hypothesis, and to judge of their credibility, to draw all reasonable inferences from the facts in evidence, and to determine what the conduct of the deceased was, and the circumstances surrounding him, and how his mind was occupied at the time of the fatal injury. When there is any evidence in support of a verdict, it will not be set aside because it is against the weight of the evidence, unless it is so clearly wrong as to authorize the Court to believe it was the result of a mistake, or that the jurors acted from passion or prejudice, or some other improper motive. *Kane* v. *Railway Co.*, 128 U. S. 91, 9 Sup. Ct. Rep. 16, was an action to recover damages in consequence of an injury to a brakeman from a missing step which he knew was gone, but failed to think of at the time of the injury. The Court said, in conclusion of its opinion: "We are of opinion that the Court erred in not submitting to the jury to determine whether the plaintiff in forgetting or not recalling, at the precise moment, the fact that the car from which he attempted to let himself down was the one from which a step was missing, was in the exercise of the degree of care and caution which was incumbent upon a man of ordinary prudence in the same calling, and under the circumstances in which he was placed. If he was, then he was not guilty of contributory negligence that would defeat his right of recovery." The following cases we regard as analogous in principle to the case in hand, and support this decision. *Snow* v. *Railroad Co.*, 8 Allen, 441; *Plank* v. *Railroad Co.*, 60 N. Y. 607; *Devlin* v. *Railway Co.*, 87 Mo. 545; *Railway Co.* v. *Bayfield*, 37 Mich. 205; *Fernandez* v. *Railway Co.*, 52 Cal. 45.

The case of *Snow* v. *Railroad Co.*, *supra*, was instituted to recover damages for an injury in consequence of stepping into a hole in a plank between the rails of the track. This language appears in the opinion: "Nor do we think it was any the less a question of fact to be decided by the jury because it appeared that the plaintiff had previous

knowledge of the defect in the road which caused accident. This certainly was a circumstance to be taken into consideration, but by no means a decisive one. If the service to be performed by the plaintiff was of a character to require that his exclusive attention should be fixed upon it, and that he should act with rapidity and promptness, it could hardly be expected that he should always bear in mind the existence of the defect, or be prepared at all times to avoid it." The danger causing the injury complained of in the cases cited was the only one shown of the same character, while in this case the frogs in the defendant's track were all open and dangerous. And this is urged as a material distinction. But we incline to the opinion that a careful man, informed of a number of open frogs, would be as likely to overlook one happening in his way when making a coupling, as he would with the knowledge of but the one causing the injury. Whether the failure to recall the danger at the time of injury in either case could be conconsistent with common prudence would be a question for the jury to determine. The judgment of the District Court is affirmed.

ANDERSON, J., and BLACKBURN, J., concurred.