## THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY v. FOWLER, ADMINISTRATOR.

[No. 18,819.    Filed Feb. 28, 1900.    Rehearing denied June 5, 1900.]

MASTER AND SERVANT.—*Negligence.*—*Scope of Employment.*—A complaint in an action against a railroad company for the death of a freight conductor caused by a trestle giving way, alleged that decedent in charge of a train arrived late at night at a station about a mile from the trestlework, and was informed by the superintendent of the road of a severe rain-storm, and of his apprehended danger to the road at a culvert about halfway between the station and the trestle, and at another point beyond the trestle, but nothing was said about the trestle; that the conductor detached the locomotive, and with the engineer, fireman, brakeman and road superintendent, started forward to inspect the road at said points, found the first culvert uninjured and proceeded to the second, and on attempting to cross the trestle, it gave way and the conductor was killed. *Held,* that the action of the conductor was not such a departure from the work he was employed to perform as to warrant the court in ruling as a matter of law that he was thereby guilty of negligence. *pp. 683-689.*

NEGLIGENCE.—*Evidence.*—*Railroads.*—*Master and Servant.*—In an action against a railroad company for the death of a freight conductor caused by a trestle giving way, the evidence showed that the stream across which the bridge was built ran through a wooded district; that the stream was subject to sudden rises, and, when at flood, carried a large amount of driftwood; that defendant had removed a truss-bridge and replaced it with a trestle bridge, the trestle posts standing upon mudsills resting upon leveled rock stratum at the bottom of the stream, without anchors; that the trestle bents were twelve and one-half feet apart and were placed at such an angle to the channel and current of the stream that a straight line up and down the channel would not show more than three feet between the bents for the passage of driftwood; that on the morning after the accident four or five posts of the trestle were found broken and a large tree found resting on the bank below the bridge. *Held,* that the question of defendant's negligence was properly left with the jury, and that the evidence was sufficient to sustain a verdict for plaintiff. *pp. 689-692.*

From the Montgomery Circuit Court.    *Affirmed.*

*John G. Williams, A. D. Thomas* and *W. T. Whittington,* for appellant.

*B. Crane* and *A. B. Anderson,* for appellee.

HADLEY, C. J.—Suit by appellee to recover damages for wrongfully causing the death of Robert P. Fowler.

After formal averments, it is alleged in the complaint that: "For twenty-five years prior to the 1st day of March, 1896, said road was carried over a stream in said Montgomery county, known as Walnut Fork, on a Howe truss-bridge of one span, of about 150 feet between the abutments on the banks of said stream; that the bottom of said bridge was about twenty-five feet above the bed of said stream, which, at that point, consisted of smooth rock in place; that said stream flowed between well defined banks about 150 feet apart, and said road and said bridge crossed said stream at an angle of about thirty degrees; that said stream, at the place crossed by said bridge, has a great fall, and for some distance above said bridge the current is very rapid, and the stream approaches said bridge upon a curve or bend, being about 300 feet up-stream from the bridge; that said stream has always been accustomed to sudden and great floods, rising with great rapidity, and carrying great quantities of water and driftwood down said stream and under said bridge, frequently rising to a height of twelve or fifteen feet above the ordinary flow of the water; that frequently, during the time prior to the taking down of said bridge, as hereinafter alleged, said stream rose suddenly to a height of twelve or fifteen feet above the ordinary stage, carrying with it large quantities of driftwood, consisting, in part, of logs, stumps, and tops of large trees, all of which safely passed through and under said bridge without injury thereto or to said railroad; of all of which facts then, and at all times thereafter, the defendant had full notice and knowledge; that on the said 1st day of March, 1896, the defendant removed said bridge, and in the place thereof carelessly, negligently, and unskilfully constructed and placed on the smooth surface of the bottom rock of said stream another bridge, consisting of a series of bents constructed of pine timber about sixteen inches square, resting on mudsills placed upon

the smooth surface of said rock bottom, without stays or anchors or other fastenings to hold them in place, at about an angle of thirty degrees with the thread of the stream, and at right angles with the line of said road; that twelve of said bents were placed parallel to each other, at the angle and in the manner aforesaid, on said rock bottom, twelve feet apart, and in such position with reference to said stream that an unobstructed opening of one to two feet was left for the passage of water and driftwood between said bents; that said bents acted as an obstruction to the flow of said stream, and caught the driftwood in time of high water; that, about 6 o'clock on the afternoon of July 28, 1896, while said trestlework was standing as aforesaid, a heavy and severe rain fell in said county along the line of said stream above said trestlework, and said stream rose suddenly to a height of about ten feet above the ordinary stage of said stream, carrying upon and against said trestlework large quantities of drift, logs, stumps, and large trees, which lodged against said trestlework, and, about 12 o'clock p. m. of said day, the force of the current of said stream and the backwater, caused by said trestlework and drift, forced said bents out of position, and carried them several feet downstream, and out of line with said road, and so destroyed said trestle that it was impossible for a locomotive engine or train to cross the same with safety; that on said July 28, 1896, plaintiff's decedent was in the employ of the defendant in the capacity of a conductor of a freight train, and upon said day had in charge a freight train running from Terre Haute to Logansport; that plaintiff's decedent arrived with his train at 11:30 p. m. on said day, at Crawfordsville Junction, a point on said road about one mile south of said trestlework, and was there informed by John S. Brothers, who was then road superintendent of said road, of the severe rain-storm above mentioned, and of apprehended danger to said road at a culvert about half way between said junction and said trestlework, and at another place a mile or so north of and

beyond said trestlework; that said Brothers was the road master of defendant, having in charge the care, maintenance, and inspection of the line of said road, and knew and had knowledge of the condition of the road-bed, bridges, and trestles, and resided in Crawfordsville, in said county, within one mile of said trestlework, and upon the night of said storm was looking after the line of said road to ascertain the extent of the injuries that might have resulted from said storm; that said Brothers was at said junction, and informed decedent of the apprehended injuries to said road at the two points above mentioned, and no others; and after said Brothers and said decedent had consulted with reference to said matters, said locomotive was detached from said train, and run forward, with said Brothers and plaintiff's decedent and the engineer and fireman and a brakeman thereon, to said culvert, where it was stopped, and the road inspected and found to be uninjured; that thereupon the plaintiff's decedent and said engineer, brakeman, and fireman boarded said engine, and, without any notice or knowledge of the faulty construction and condition of said trestlework, and believing the same to be safe, and upon the order of said Brothers, started forward to inspect said place of apprehended danger north of and beyond said trestlework; that, as said locomotive approached said trestlework, the engineer discovered that said trestle and track were out of line, and before said locomotive could be stopped, or the persons thereon could get off from said locomotive, it ran upon said trestlework, which gave way, and precipitated said locomotive to the ground below and into said stream, whereby the decedent was caught between the engine and tender of said locomotive, and crushed, and carried into the water below, and drowned and killed,"—all without fault of the decedent.

Demurrer to the complaint overruled. Answer in general denial. Verdict and judgment for plaintiff. Motion for new trial overruled. Error assigned by appellant on both adverse rulings.

The point made against the complaint is that the decedent, at the time he lost his life, was, without the direction or acquiescence of his employer, acting without the scope of his employment; that, being the conductor of a freight train, it was no part of his duty to inspect the track; and that when he detached the locomotive and went forward on it to inspect reported impairments, he was performing work which he was not employed to perform, and in respect of which appellant owed him no duty to furnish him a safe trestle over which to pass.

We concede the rule to be as contended, that the master's duty to the servant only extends to the particular work, or class of work, which the servant is employed to perform, and that when the servant, without the command or acquiescence of the master, voluntarily undertakes hazardous work outside of his employment, he puts himself beyond the protection of the master's implied obligation, and, if he is injured, he is without remedy. *Brown* v. *Byroads*, 47 Ind. 435; *Pittsburgh, etc., R. Co.* v. *Adams*, 105 Ind. 151; *Jorgenson* v. *Chair Co.*, 169 Ill. 429, 48 N. E. 822; *Mellor* v. *Merchants, etc., Co.*, 150 Mass. 362, 23 N. E. 100, 5 L. R. A. 792; *Knox* v. *Coal Co.*, 90 Tenn. 546, 18 S. W. 255; *Freeberg* v. *Plow Works*, 48 Minn. 99, 109, 50 N. W. 1026.

But the rule stated does not have strict application in all cases. In the presence of an emergency, when an unusual situation presents itself, and the employe, having in view the general scope of his duty, voluntarily steps outside the strict bounds of his employment, he is justified, if, under the circumstances of the case, common prudence fairly and reasonably called for the act.

The principle is clearly stated by an eminent author in these words: "While as a general rule the servant has no claim for damages for injuries received while voluntarily assuming to do something which the master did not employ him to do, yet, in case of emergency, he may of his own

volition step outside of the line of his usual duties, and if this departure is only such as the necessities of the case fairly and reasonably call for, keeping in view the character of the work he is required to do, it will not of itself defeat a recovery of damages in case he is injured. Whether he is guilty of negligence is a question for the jury, and his conduct must be tried in the light of all the surroundings. Hence it was held that an engineer who left his engine in charge of the fireman, in violation of the rules of the company, and stepped on the main track and signaled the fireman to move his train on the side-track, and while thus engaged was run over and killed by a hand-car in charge of section-men, that he was not so without the scope of his employment, or negligent, but that his representatives could recover from the master damages for his death." Bailey's Per. Inj., Vol. 2, §3524.

In the case referred to by the author, it is said: "While it is not the duty of an engineer to leave his engine for the purpose of getting signals, still it can not be ruled as a matter of law that the plaintiff must fail in this suit because Barry stepped out on the main track to get the signals, even though it was no part of his general duties thus to do." *Barry* v. *Hannibal, etc., R. Co.*, 98 Mo. 62, 11 S. W. 308.

In *Seley* v. *Southern, etc., R. Co.*, 6 Utah 319, 23 Pac. 751, it was held that the duties of a freight conductor are "somewhat general," and that when the conductor, upon failure of the brakeman successfully to make a coupling, stepped in, and in attempting to make it lost his life, he was not so far without the scope of his employment as to preclude a recovery.

In *Somerset, etc., R. Co.* v. *Galbraith*, 109 Pa. St. 32, 1 Atl. 371, it was said: "Galbraith was the conductor of the train, he was bound to exercise in the interest of his employer all due care and caution. If he knew of any obstruction on the track, or had reason to expect any, it was his clear duty to guard against it. 'The conductor * * *

is held responsible for the safe transport of his train, and that requires of him, in cases of this kind, to use judgment.' * * * He was held, of course, to the reasonable observance of all these rules but he had a general duty and discretion to exercise in an emergency." To the same effect, see Bailey's Per. Inj. §3400; see also Thompson on Neg., 1017; *Sears* v. *Central, etc., Co.*, 53 Ga. 630.

As conductor of the train, it was Fowler's duty to take it safely to its destination on schedule time, or in accordance with such special orders as he might receive from his superiors. In the orderly, timely, and safe movement of the train, he was the responsible agent, and, in respect of controlling and safeguarding the train in its progress, the scope of his employment required of him such care and caution as the nature and magnitude of his trust fairly demanded.

The complaint shows that he arrived at the junction about midnight. He was there informed that there had been a heavy rainfall in the vicinity; that two culverts, one a half-mile and the other about two miles north of the junction, had probably been rendered unsafe to the passage of his train. His informant was appellant's road master in charge of all that particular part of the road, and who lived in the neighborhood, and but a mile distant from the fatal trestle, and whose duty it was to keep well informed of the condition of the road, and who, in describing to Fowler apprehended injuries to the track, had made no mention of the trestle. As an employe, alert to his employer's interest, and to the discharge of his duty as the responsible manager of the train, what was the deceased to do? To have run the train forward, heedless of the warnings, would have been positive negligence. To have run the whole train forward to the first point of apprehended injury, with the probable result of being forced to return for materials and men to make repairs, would seem unwise, and a needless waste of time. To have remained impassive at the junction with his train until the road master could

have found his way to the questionable places, and returned with information that it was safe to proceed, would seem wholly inconsistent with his general duty to move his train safely and on time. In any view of the case, it is very clear that his prompt detaching of the engine, and taking on board one of his brakemen and the road master, probably as helpers if need be, and proceeding to the reported danger points for personal inspection, to see, with his own eyes, the character and extent of the new peril to be encountered by his train, was not such a departure. from the work he was employed to perform as will warrant the court in ruling, as a matter of law, that he was thereby guilty of negligence. Beyond all question, the averments of the complaint are sufficient to withstand a demurrer.

As a reason for a new trial, it is insisted that the verdict is not sustained by sufficient evidence. It is claimed that there is no evidence to show either negligence on the part of appellant, or freedom from contributory negligence on the part of the deceased. The negligence charged against appellant is in constructing and maintaining the trestle; in failing and neglecting to maintain a proper and suitable bridge to carry the railroad over the stream; and in failing properly to guard and inspect the bridge.

The evidence tends to prove that the stream of Walnut Fork runs through a timbered district; that its current is rapid and subject to sudden rises, and when at flood carries a large amount of driftwood. On three previous occasions, namely 1875, 1883, and September, 1895, the stream was as high, and in 1883 two feet higher, than it was on the night of July 28, 1896, when Robert P. Fowler lost his life. For more than twenty-five years prior to 1896, appellant had maintained across the stream a Howe truss-bridge, having a span of more than 100 feet of clear space between the abutments; and during the previous floods of 1875, 1883, and 1895, the stream was well known

to have carried down, with its other drift, large trees and logs, and passed them without injury under the railroad bridge. In January, 1896, the appellant removed its Howe truss-bridge, and replaced it with a trestle bridge. In the new bridge there were ten bents placed at right angles with the line of the railroad, and twelve and one-half feet apart from center to center, with eleven feet of clear space between them, the trestle posts standing upon mudsills resting on the leveled rock stratum at the bottom of the creek. The rock stratum dipped to the southwest, or down-stream, and the level for the mudsills was, as a rule, but not without exception, produced by hewing down the rock at the upper end. There were no anchors placed in the mudsills. The railroad crossed the stream at an angle less than a right angle, and there was evidence tending to prove that the trestle bents were placed at such an angle to the channel and current of the stream that a straight line up and down the center of the channel would show not exceeding three feet of clear space between the bents for the passage of driftwood. On the morning after the accident, four or five posts of the trestle were found broken, and lodged in a drift downstream, and a large tree that had never been there before was found resting on the bank a few hundred yards below the bridge. The trestle was new, well constructed for a bridge of its kind, except as may be inferred from the failure to anchor the mudsills, in good repair, and sufficient to carry four times the weight of the locomotive that fell through it, or four times the weight of the decedent's train. As the party on the engine approached the trestle, the engineer, a moment before the accident, but not in time to stop the engine, discovered that the track on the bridge was several feet out of line down-stream.

It is argued that the flood of July 28th was most unusual and extraordinary, and carried an unusual amount and quality of drift, and that the law does not require the appellant to provide against such events, and that the bridge, being

sufficient and safe against usual floods and drifts, negligence can not be imputed to it in the erection of the trestle. If the flood of July 28th had been unprecedented, there would be substance in this contention. If such flood had never occurred within the memory of those residing in the neighborhood prior to the erection of the trestle, then the appellant had the right to assume that it would not occur at all, and would have been excused in not providing against it. But the evidence tends to show that in 1875, 1883, and in September, 1895, the stream had been as high, and the drift as great, and in 1883 higher and greater, than at the time of the accident. Of these events appellant was bound to take notice. It had been in possession of that part of the stream for twenty-seven years, and must be held to know, concerning its nature and characteristics as to floods and drift, what it might have known upon reasonable inquiry. The master carpenter in charge of that division of appellant's road, and who had been in its employ for twenty-seven years, testified that he had known the stream for twenty-seven years, remembered the floods of 1875 and 1895, and had frequently seen brush, rails, and logs being carried by its current, and that he knew as much about the stream as the neighbors, when the trestle was put in. Because the flood was unusual and extraordinary will not excuse the appellant if the character and history of the stream showed that such a flood might at some time be reasonably expected. In constructing the trestle it was required to provide against such dangers as could have been reasonably foreseen, and to adopt such precautions as men of ordinary sagacity and caution would anticipate and look forward to. *Scagel* v. *Chicago, etc., R. Co.*, 83 Iowa 380, 388, 49 N. W. 990; *Bogart* v. *Delaware, etc., R. Co.*, 145 N. Y. 283, 40 N. E. 17; *Doyle* v. *Chicago, etc., R. Co.*, 77 Iowa 607, 42 N. W. 555, 4 L. R. A. 420; *Carney* v. *Caraquet R. Co.*, 29 N. B. 425. In the last case cited it is said at page 431: "I have no doubt,  *  *  *  *  that if the bridge had

given way whilst a train with passengers had been crossing over it, the railway company would have been liable in law for all damages which resulted; and that liability would have arisen because the bridge had been insecurely and insufficiently built. There was no 'act of God' or *vis major* about it. The bridge yielded and gave way when there came more ice, a higher tide and a greater storm than usual, but not greater nor higher than a person living in that section of the country might reasonably expect would come."

If, therefore, the flood and character of the drift that broke the bridge on the night of July 28th might have been reasonably foreseen, the railroad company was required to provide against it; and however substantially constructed and strong the trestle, we can not say as a matter of law that the appellant was free from negligence in placing the bents athwart the current of the stream, which was known to be liable to sudden and great floods, and to carry a large amount of heavy and dangerous drift to beat against it. The question of appellant's negligence was properly left to the jury, as was also the question of the decedent's contributory negligence; and the verdict is sufficiently sustained by the evidence.

The action of the court in refusing to give to the jury appellant's request, number seven, is complained of. It presents the appellant's theory that the detaching of the engine by the decedent, without the order or acquiescence of appellant, and voluntarily proceeding on the engine to inspect the track, was such a departure from the duties of his employment as constituted negligence *per se.* The same question arose on the demurrer to the complaint, and, for reasons there given, we hold that the instruction was properly refused.

We find no error in the record. Judgment affirmed.