HOLLENBACK, Respondent, *v.* STONE & WEBSTER ENGINEERING CORPORATION et al., Appellants.

(No. 3,209.)

(Submitted January 10, 1913.   Decided January 28, 1913.)

[129 Pac. 1058.]

*Personal Injuries — Death by Wrongful Act — Master and Servant—Electricity—Rescuing Master's Property—"Scope of Employment"—Instructions—Contributory Negligence— Complaint—Sufficiency—Trial — Argument—Excessive Verdict.*

Personal Injuries—Contributory Negligence—Complaint—Sufficiency.
   1.  Complaint *held* not to show affirmatively that the proximate cause of the injury of deceased was his own act; hence the pleader was not obliged to allege facts negativing the idea that deceased was guilty of contributory negligence.
Same—Master and Servant—Negligence—Complaint—Evidence—Improper Argument—Waiver.
   2.  Where evidence touching a phase of negligence not alleged in the complaint in an action to recover damages for the wrongful death of

an employee was permitted to go in without objection, and defendant corporation made no request that it be withdrawn or its effect limited by instruction, it was not in a position to urge error because of the alleged misconduct of plaintiff's counsel in arguing to the jury that defendant was guilty of negligence in the respect shown by such evidence.

Same—Excessive Verdict—Supreme Court will not Interfere, When.
3.   Where, in an action for wrongful death, it is possible from the evidence to account for the amount of the verdict complained of as excessive, the supreme court will not interfere, unless the record discloses that the elements of passion and prejudice influenced the minds of the jurors in arriving at the result.

Same—Excessive Verdict—Case at Bar.
4.   Deceased was a young man nineteen years of age. At the time of his death, caused by coming in contact with a high-tension, un-insulated power wire, he was employed as a fireman for a stationary engine, earning three dollars a day. He was of a mechanical turn of mind, ambitious, and held a stationary engineer's license. His mother, the plaintiff, was altogether dependent upon him for her support. *Held*, that a verdict for $18,000 was not excessive, under instructions relating to the measure of damages (not objected to and the correctness of which is not passed upon) which told the jury that plaintiff was entitled (1) to all the wages of deceased until he became of age, and (2) to such proportion of his earnings, after he arrived at twenty-one, as she might reasonably expect to receive from him during her lifetime.

Same—"Scope of Employment"—Death of Employee While Acting Within.
5.   *Held*, that a fireman for a stationary engine located in the bed of a river across which a power dam was being constructed, who, while endeavoring to rescue certain of his employer's property more or less directly related to his work as fireman, and which was floating in a pool of water rapidly collecting about the engine because of a break in the pumping machinery, was killed by coming in contact with a high-tension power wire, was engaged in the discharge of his duties within the scope of his employment at the time of his death.

Same—Jury—How It may Arrive at Verdict.
6.   In rendering a verdict the jury are not confined in their determination to the precise language in which the evidence is given, but may find a verdict upon any fair inference deducible from the evidence.

Same—Rescuing Employer's Property—Employee Acting Within Scope of Employment.
6a.   A servant engaged in the rescue of his master's imperiled property is acting within the scope of his employment.

Same—Rescuing Employer's Property—Contributory Negligence.
7.   Where plaintiff receives the personal injuries for which he seeks recovery from his master, while attempting to rescue the latter's imperiled property, and the defense of contributory negligence is interposed, the question must be determined by inquiry whether plaintiff, in doing what he did, acted with ordinary care and prudence.

Same—Acting Within Scope of Employment—Erroneous Instruction.
8.   An instruction that if deceased voluntarily, and not at the instance or request of defendant, went into the place where he was killed, then he was not working in the employ of defendant, was erroneous and properly refused.

Insufficient Instruction—Duty of Appellant.
9.   In the absence of a request for an instruction more specific than one given, appellant cannot complain of the latter.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

Action by Matilde Hollenback against the Stone & Webster Engineering Corporation, and I. H. Gohrmley, its supervising engineer, to recover damages for the negligent killing of her minor son while in the employ of defendants. From a judgment in favor of plaintiff and an order denying it a new trial the defendant corporation appeals. Affirmed.

*Messrs. Day & Mapes,* and *Mr. John G. Brown,* for Appellants, submitted a brief; *Mr. E. C. Day* and *Mr. Brown* argued the cause orally.

Appellant, having provided a safe place for the deceased, had discharged its duty to him fully. When the place became unfit for work by flooding, and while the appellant was engaged in pumping the water out so as to make the place fit, it owed no other duty to the deceased than to refrain from ordering him into the dangerous place, and this duty it discharged. It was not called upon to anticipate that deceased would be doing anything other than that required by his duties. Hence, assuming that it was negligent in regard to the insulation of the wires, with which deceased came in contact, or in failing to cause the electricity to be shut off from them, its negligence in this respect was not the proximate cause of the injuries. The act of the deceased in going upon the raft was an independent cause which intervened to make possible the injuries which resulted. (*Therriault* v. *England,* 43 Mont. 376, 116 Pac. 581; *Mitchell-Tranter Co.* v. *Ehmett,* 23 Ky. Law Rep. 1788, 55 L. R. A. 710, 65 S. W. 835; *Talking* v. *Washington Veneer Co.,* 61 Wash. 137, 112 Pac. 261.)

The mere fact that an employee, engaged to do safe work at a safe place, is injured while attempting to do a dangerous act not connected with his usual employment does not, in the absence of all evidence that he was directed to do it by someone in authority, raise any question of liability on the part of his

employer.   (*Pfeffer* v. *Stein,* 26 App. Div. 535, 50 N. Y. Supp. 516.)

The master is not liable for injuries to his servant unless the servant was at the time of his injuries in the performance of some duty for which he was employed.   (*Stagg* v. *Edward Westen T. & S. Co.,* 169 Mo. 489, 69 S. W. 391; see, also, *McGill* v. *Main N. H. Granite Co.,* 70 N. H. 125, 85 Am. St. Rep. 618, 46 Atl. 684.)   The duty of the employer to the employee to have and keep a place reasonably safe does not exist unless the employer or his representative knows or has reason to believe that the employee is serving his master in such place.   (*Bunida* v. *Armour,* 150 Ill. App. 302.)

The theory upon which the case was presented to the jury was that the deceased, at the time of receiving the injuries complained of, was engaged in rescuing property which had been committed to his care.   It is true that the courts recognize the right of the employee to go outside of the line of his employment in cases of emergency to rescue either life or property. Where the departure from the line of duty is to rescue the lives of those in peril, the rule is well settled that the person who thus rushes into a place of danger to rescue lives imperiled by the negligence of another may recover unless his attempted rescue was undertaken under circumstances amounting to rashness. (*Bracey* v. *Northwestern Improvement Co.,* 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706.)   But the right of the servant to depart from his line of duty to rescue property is not so clearly defined.   The court of appeals of New York, in the case of *Eckert* v. *Long Island R. Co.,* 43 N. Y. 502, 3 Am. Rep. 721, says: "For a person engaged in his ordinary affairs or in the mere protection of property, knowingly and voluntarily to place himself in a position where he is likely to receive serious injury is negligence, which will preclude a recovery for the injury so received."   However, there was nothing in the circumstances surrounding this accident which would create an emergency that would justify deceased in going from a place of safety into the water, either upon a raft or otherwise, to rescue a few empty

cans which were in the pond, and instruction 5 should not have been given, because there was no evidence to sustain a finding that it was necessary for him to do so.

The complaint is insufficient to state a cause of action. It alleges that defendant had about the servant's working place a highly dangerous instrumentality, to-wit, unprotected or unguarded electricity, and that the servant came in contact with it and was killed thereby. These allegations alone fail to state a cause of action. When the complaint alleges injury from a known dangerous thing, before it can be held good, it must also allege (1) freedom from contributory negligence in so many words, or (2) excuses for the negligent act of coming in contact with the thing. This complaint fails to do either. (*Badovinac* v. *Northern Pac. Ry. Co.*, 39 Mont. 454, 104 Pac. 543; *Schroder* v. *Montana Iron Works*, 38 Mont. 474, 100 Pac. 620.)

The verdict is excessive. This court has recently dealt with the subject of excessive damages in the case of *Yergy* v. *Helena Lt. & Ry. Co.*, 39 Mont. 213, 18 Ann. Cas. 1201, 102 Pac. 310, which has been selected for annotation by the editors of the American and English Annotated Cases, and, appended to the case as reported in volume 18, is an exhaustive note upon the subject. On page 1225 are catalogued the verdicts for deaths of minor male children, which have been sustained as not excessive, and on page 1228 will be found those verdicts which have been set aside or reduced as excessive. In no instance that we have been able to find has a verdict of so large an amount as this been permitted to stand, when the actual earning capacity of deceased is taken into consideration.

*Mr. O. W. McConnell*, for Respondent, submitted a brief and argued the cause orally.

"If a common laborer who attempts to perform a hazardous service temporarily outside of his employment is injured while performing such duty, his apparent consent alone will not defeat his right of recovery, though the danger is apparent to a person possessed of skill, but not to a common laborer." (Bailey's

Master's Liabilities to Servants, p. 221; *Gill* v. *Homrighausen,* 48 N. W. 862; *Davidson* v. *Cornell,* 132 N. Y. 228, 30 N. E. 573.)

The deceased was performing a duty at the time of the accident in connection with taking care of his engine, which was in the line of his duties. What he did may be considered outside of his employment, if that is to be confined to the narrow limits of firing his engine only, but what he did was so closely allied and in keeping with what he was daily required to do, that it cannot be said that it was outside the line of his employment, at least it was a question that was properly submitted to the jury to determine whether it was outside the line of his employment. The service that he was called upon to perform, and did perform, was not an extrahazardous service, except that it was made so by the negligent acts of the defendant corporation in having its live wires heavily charged with electricity, barren of insulation, in such a position that the deceased came in contact with them. Had it not been for the negligent acts of the defendant corporation there would have been no accident. There would have been no peril or hazard in the deceased going to the engine or in lifting the wires to get there.

It is a presumption that may be indulged in law, as well as in the natural events and course of life, that a person will not knowingly, recklessly and with utter disregard to life go into a known place of danger and tamper and trifle with death-dealing devices that mean instant death upon coming in contact with them. So in this instance the instinct of self-preservation is presumed to have been so strong in the deceased that he would not have knowingly, recklessly, without care or caution, taken hold of the wires had he for a moment suspected that they were charged with electricity. He had a right to assume and believe that there was no current in the wires, and there should not have been if the defendant corporation had not been derelict in its duty. "A jury may infer ordinary care and diligence on the part of an injured person, from the love of life, the instinct of self-preservation and the known disposition of men, to avoid injury." (*Kansas City etc. R. Co.* v. *Gallagher,* 68 Kan. 424, 64 L. R. A. 347, 75 Pac. 469; *Dewald* v. *Kansas City, Ft. S. &*

G. R. Co., 44 Kan. 586, 24 Pac. 1101; *Baltimore & P. R. Co.* v. *Landrigan*, 191 U. S. 461, 24 Sup. Ct. Rep. 137, 48 L. Ed. 262.)

In the absence of evidence to the contrary, there was a presumption that the deceased surveyed the premises where his employer's property was being injured and lost; that he saw no danger in going to it to get it and preserve it; that he saw no lights burning; that he believed the electricity was shut off from the entire works by reason of the fact that the pumps were not working, and the presumption is that he did everything that was necessary to be done before going to preserve the property, and that he did not go wantonly and recklessly into a known danger, for none was apparent to him.

This court in *Bourke* v. *Butte E. & P. Co.*, 33 Mont. 267, 83 Pac. 267, holds companies operating an electric line to a reasonable degree of care in erecting pole lines, selecting appliances and insulating the wires, and maintaining a system of inspection by which any defects or changes may be reasonably discovered.

In *Rucker* v. *Sherman Oil & Cotton Co.*, 29 Tex. Civ. 418, 68 S. W. 818, the court held: "A company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business or pleasure, to prevent injury." (See, also, *Thomas* v. *Wheeling Electric Co.*, 54 W. Va. 395, 46 S. E. 217; *Geismann* v. *Missouri Edison Electric Co.*, 173 Mo. 654, 73 S. W. 659; *Fitzgerald* v. *Edison Illuminating Co.*, 200 Pa. 540, 86 Am. St. Rep. 732, 50 Atl. 161.)

There are many other cases holding the company to the highest degree of care in rendering its premises reasonably safe to its employees and others, even those having no contractual relation with it who may come upon the premises and are likely to come in contact with the wires. (*Brooks* v. *Consolidated Gas Co.*, 70 N. J. L. 211, 57 Atl. 396; *Sommer* v. *Public Service Corporation*, 79 N. J. L. 349, 75 Atl. 892; *Gremnis* v. *Louisville Electric Light Co.* (Ky.), 49 S. W. 184; *Wales* v. *Pacific Electric Motor Co.*, 130 Cal. 521, 62 Pac. 932, 1120.)

If deceased was doing an act in emergency and had grasped the wires when he should not have done so, which act contributed to his injury, even then the plaintiff would be entitled to recover, for, "Where a young and inexperienced servant is injured while acting in an emergency caused by the master's negligence, he may recover, although, in the excitement of the moment, he loses his presence of mind and does an act which contributes to his injury." (26 Cyc. 1245; *McMillan Marble Co.* v. *Black*, 89 Tenn. 118; 14 S. W. 479; *Southwest Imp. Co.* v. *Smith*, 85 Va. 306, 17 Am. St. Rep. 59, 7 S. E. 365.)

There being no showing by the appellant that there was any passion or prejudice on the part of the jury, even if the court is of the opinion that the verdict is in a larger sum than the evidence justifies, it will not interfere, for: "The mere fact that a verdict is returned for a larger sum than the evidence justifies in the opinion of the court is not a sufficient ground for judicial interference, unless it appears to have been the result of passion or prejudice on the part of the jury." (*Kennon* v. *Gilmer*, 9 Mont. 112, 22 Pac. 448; *Sweeney* v. *City of Butte*, 15 Mont. 274, 39 Pac. 286; *Flaherty* v. *Butte Electric Co.*, 42 Mont. 95, 111 Pac. 348; *Lewis* v. *Northern Pac. Ry. Co.*, 36 Mont. 208, 92 Pac. 469; *Yellowstone Park R. R. Co.* v. *Bridger Coal Co.*, 34 Mont. 563, 115 Am. St. Rep. 546, 9 Ann. Cas. 470. 87 Pac. 963; *Birkett* v. *Knickerbocker Ice Co.*, 110 N. Y. 504, 18 N. E. 108; *Rosenkranz* v. *Lindell Ry. Co.*, 108 Mo. 9, 32 Am. St. Rep. 588, 18 S. W. 890; *John* v. *Northern Pac. Ry. Co.*, 42 Mont. 48, 11 Pac. 632; 8 Cyc. 630–912.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action for damages for death by wrongful act. The plaintiff, the mother of the deceased, alleges that she is the sole surviving heir at law of John Hollenback, and that at the time of his death, she was altogether dependent upon him for her support. At the time of the accident John Hollenback, a minor about nineteen years of age, was employed by the defend-

ant Stone & Webster Engineering Corporation as fireman for a hoisting engine at a time while the dam was being constructed across the Missouri river at Hauser Lake. A large force of men was employed and the work prosecuted continuously. The works and grounds adjacent were lighted, and certain power machinery was driven, by electricity furnished from Canyon Ferry and carried to Hauser Lake over high tension lines to a power-house where it was stepped down to the voltage required. The waters of the Missouri river had been turned from the natural channel through a flume, and on account of seepage and leakage from this flume, the water would continuously rise in the river-bed below the dam at the point where the engine upon which young Hollenback was employed was situated, necessitating the use of force pumps to keep the water out of the way. The pumps were located upon a scow, some sixty or seventy feet from Hollenback's engine, and were operated by electrical power. The engine about which Hollenback was employed was partially inclosed in a small frame shed situated immediately below the dam and almost surrounded by the dam, the river bank and a large pile of dirt. These obstructions so far cut off the light from the engine-shed that it required artificial light, not only during the night-time but late in the morning and early in the evening as well. To meet this demand, wires were strung from the power-house by way of the pump scow, to the engine-shed and light supplied by means of a cluster of four lamps. At the point where these wires left the pump scow there was a switch by which the current to the engine-shed could be cut off. These light wires carried 440 volts and led into the engine-shed at the height of six or seven feet above the ground, and a few inches from the engine-shed doorway. On the night of April 28 the high tension power lines from Canyon Ferry became disabled, resulting in the lights being extinguished and the pumps stopped. As soon as the pumps ceased working, the river-bed about young Hollenback's engine began to fill with water. When Hollenback reported for work about 7 A. M. of April 29 he found his engine surrounded by water and the water so high in and about the engine-shed that work with the engine was im-

possible, and the water continued to rise thereafter for some considerable time. Hollenback and Purcell, the day engineer, gathered up some of the tools about the engine and carried them to a place of safety. Purcell then suggested that they wait upon the river bank until they could see Gohrmley, the supervising engineer, and report to him. After waiting some twenty minutes or more, Hollenback started away and in answer to Purcell's inquiry said that he was going down to the engine. Purcell suggested that it was not necessary, as he could not do anything down there, but Hollenback continued down to the water's edge, where he constructed a raft, got upon it and made his way toward the engine-shed. When six or seven feet from the shed door he came to the light wires running from the pump scow to his engine-shed. These wires were then only eighteen inches or two feet above the surface of the water. Hollenback took hold of one of the wires to pass under it and was electrocuted. Gohrmley, the supervising engineer, was made a party defendant.

The plaintiff charges negligence on the part of defendants in failing to exercise reasonable care to provide young Hollenback with a reasonably safe place in which to perform his work, and the following particulars are specified: "(a) Stringing live wires of high voltage · close to the ground where employees would come in contact with the same. (b) Failure to run these wires out of range of employees, as the corporation could and should have done. (c) Using wires that were old and bare of insulation. (d) Failure to shut off the electricity in these bare wires of high voltage at the switch provided for that purpose."

The defendants admit the employment of deceased and his death, but deny any negligence on their part, and plead contributory negligence on the part of the deceased. The affirmative allegations of the answer were put in issue by reply. The trial of the cause resulted in a verdict and judgment in favor of plaintiff and against the defendant Stone & Webster Engineering Corporation for $18,000 and costs. From that judgment and an order denying it a new trial, the corporation defendant appealed.

1. It is urged that the complaint does not state facts sufficient
[1]   to constitute a cause of action, because it does not negative
the idea that Hollenback's death resulted from his own act, and
the rule announced in *Kennon* v. *Gilmer*, 4 Mont. 433, 2 Pac. 21,
and reiterated in *Badovinac* v. *Northern Pac. Ry. Co.*, 39 Mont.
454, 104 Pac. 543, is invoked here.   In each of those cases the
injured party jumped from a moving vehicle, and the injury
resulted directly from the act.   This court, speaking of a com-
plaint which showed those facts affirmatively, said: ''Thus the
plaintiff declares that the proximate cause of the injury he sus-
tained was his own action.''   It is the general rule in this state
that contributory negligence is a matter of defense, and that
''the existence of contributory negligence need not be negatived
in the complaint unless it appears from other allegations therein
that the proximate cause of the injury was the act of the plain-
tiff.''   (*Orient Ins. Co.* v. *Northern Pac. Ry. Co.*, 31 Mont. 502,
78 Pac. 1036.)   The complaint in the present instance charges:
''VI. That the said John Hollenback, on the said 29th day of
April, 1910, while so working and in the employ of the defend-
ants, came in contact with the said live wire, so negligently and
carelessly strung and placed by the defendants, by reason
whereof the said John Hollenback was electrocuted.''   We do
not think that it can be said to appear affirmatively from this
allegation that the proximate cause of Hollenback's injury was
his own act, and therefore the case is not within the exception
declared in *Kennon* v. *Gilmer* and *Badovinac* v. *Northern Pacific
Ry. Co.*, above.

2. Complaint is made that counsel for plaintiff discussed to
[2]   the jury the effect of certain evidence and argued that the
defendants were guilty of negligence with respect to acts not
charged in the complaint to be negligent acts.   It is sufficient to
say that the evidence went in without objection and was before
the jury.   There was not any request made that it be withdrawn
or its effect limited by instructions.

3. It is claimed that the verdict is excessive.   Section 6486,
Revised Codes, provides that in a case of this character ''such
damages may be given as under all the circumstances of the case

[3] may be just.'' If it is possible from the evidence in this record to account for the amount of the verdict, then this court ought not to interfere. (*Yergy* v. *Helena Light & Ry. Co.,* 39 Mont. 213, 18 Ann. Cas. 1201, 102 Pac. 310; *Helena & Livingston S. & R. Co.* v. *Lynch,* 25 Mont. 497, 65 Pac. 919.) Under the statute, the amount of the verdict must of necessity rest in the sound discretion of the jury. The parties are entitled to a verdict from the jury, and it is only in rare instances that the court is justified in interfering, unless the record discloses that the elements of passion and prejudice have influenced the minds of the jurors in arriving at the result.

There is not any complaint made of the instructions given which advise the jury of the measure of plaintiff's recovery and [4] the circumstances to be considered in arriving at the amount which in the judgment of the jurors would be just. Assuming, without deciding, that the rules announced in those instructions are correct, the plaintiff was entitled (1) to all the wages of the deceased until he became of age, charged, however, with the burden of his support; and (2) to such proportion of his earnings, after he arrived at 21, as she might reasonably have expected to receive from him during her lifetime. The record discloses that the deceased was a very active, energetic young man, particularly devoted to mechanics, in the pursuit of which he had shown considerable ability; that he already had a stationary engineer's license and had been intrusted with the running of a stationary engine for a short time; that he was very ambitious and devoted to his mother, this plaintiff; that since he was thirteen or fourteen years of age he had been earning good wages, and uniformly turning over his earnings to his mother who had supported him. At the time of his death he was receiving three dollars per day as a fireman; and the jurors were fully justified in assuming from all the facts disclosed by the evidence that he would continue to progress in his work as he had done in the past. Based upon the wages he was then receiving and the reasonable probability that he would be able to earn, and would earn, wages equally as good or better during

the expectancy of his mother's life, and the amount written in the verdict is not beyond the legitimate limits indicated by the evidence.

4. Was the deceased engaged in the discharge of duties within [5]   the scope of his employment at the time he was injured? It is admitted in the answer that he was employed by the defendants as a fireman on April 29, 1910; but it is alleged that at the precise time of his injury he had gone beyond the scope of his employment, that he was not acting under the orders of the defendants, and that in whatever he was doing when injured he was acting as a volunteer, and that it was his own negligence which was the proximate cause of his injury.   The general rule of substantive law governing in a case of this character is tersely stated as follows.: "When a servant, of his own accord, and without the direction of his master, steps outside the scope of his employment, whether on the master's business or on his own, the master owes him no duty as to the dangers he encounters, and is not liable for any injury received." (Dresser's Employer's Liability, sec. 104.)   While the rule of pleading and practice covering the same subject is aptly stated by the supreme court of Alabama as follows: "To hold an employer liable as such for injury resulting from a breach of such duty, it must appear that the employee was, at the time of the injury, acting within the scope of his employment." (*Southern Ry. Co.* v. *Guyton,* 122 Ala. 231, 25 South. 34.)

To attempt to delimit the "scope of employment" by any definite rules of general. application would be a hopeless task. The supreme court of Pennsylvania has said: "The scope of his [the servant's] duties is to be defined by what he was employed to perform, and by what, with the knowledge and approval of his employer, he actually did perform, rather than by the mere verbal designation of his position." (*Rummell* v. *Dilworth, Porter & Co.,* 111 Pa. 343, 2 Atl. 355, 363.)   Of necessity every case must be determined by its own facts.   In the present instance the extreme difficulty which confronts us arises from the paucity of facts.   That the circumstances were such on April

29, 1910, that young Hollenback could not perform the duties primarily attaching to his position as fireman, and that he was not attempting to do so when he was injured, may be conceded. There is some evidence which tends to show that Hollenback and Purcell did not remove all of the master's tools and appliances from the engine-shed, but that certain oil cans and a tool-box were floating on the water at the time Hollenback was injured. The water formed a sort of lake surrounding the engine-shed, and on the surface of this water were floating large pieces of driftwood and other debris. It also appears that the engine-shed was open, so that the driftwood or debris might settle on or about the engine, and furthermore that there were portions of the engine's machinery and appliances which might have been injured by these floating timbers if they had drifted into the shed. That Hollenback was not merely idling away his time floating upon the water is reasonably certain. He told Purcell that he was going to the engine. He built a raft and was apparently making his way directly to the engine-shed when he was killed. Just what prompted him to go—what his purpose was—cannot be read from the printed record alone, but it is the rule that "in rendering a verdict the jury are not confined in their determination to the precise language in which the evidence is given, but may find a verdict upon any fair inference deducible from the evidence." (*Lehane* v. *Butte Electric Ry. Co.*, 37 Mont. 564, 97 Pac. 1038.)

After much serious reflection we are of the opinion that it is a fair inference from the evidence, viewed in the light of the surrounding circumstances, that young Hollenback was engaged, at the time of his death, in attempting to rescue property belonging to his master—property to which his work was more or less directly related. That Hollenback's contract of employment as fireman contemplated that he should make every reasonable effort compatible with his own personal safety to rescue his master's property if in jeopardy, and particularly property related directly to the business of operating the hoisting engine, we do not entertain any doubt. There is some conflict in the

authorities upon this subject, but the better reasoned cases and
**[6]** the dictates of common sense support the view that a servant engaged in the rescue of his master's property in peril is
acting within the scope of his employment.

In *Moyse* v. *Northern Pac. Ry. Co.*, 41 Mont. 272, 108 Pac.
1062, we held that the conductor of a freight train while asleep
in the caboose after the completion of his run, and while waiting
to be called to take out a train on the following morning, was
in the discharge of his duties, and acting within the scope of his
employment. In the note to section 625 of 2 Labatt on Master
and Servant, and in Chapter IX of 2 Dresser on Employer's
Liability, will be found many cases indicating the liberality of
the courts in treating this subject. In *Rees* v. *Thomas* (1889),
1 Q. B. D. 1015, the English court of appeals had before it a
case of a fireman employed in a coal mine. In the course of his
duty he was required to take a report to the mine company's
office. A horse drawing a truck upon which the fireman rode
ran away, and in his efforts to stop the horse the fireman was
killed. The court held that the accident arose out of, and in
the course of, the fireman's employment.

In some of the following cases it is distinctly held to be the
duy of an employee to make reasonable efforts to rescue his
master's property in jeopardy, while in others it is held that in
making such efforts he is not to be held guilty of contributory
negligence. All of the cases in principle support the rule which
we have announced above. (*Martin* v. *North Jersey St. Ry. Co.*,
81 N. J. L. 562, Ann. Cas. 1912D, 212, and note, 80 Atl. 477;
*Terre Haute & I. R. Co.* v. *Fowler*, 154 Ind. 682, 48 L. R. A.
531, 56 N. E. 228; *Prophet* v. *Kemper*, 95 Mo. App. 219, 68 S.
W. 956; *Pegram* v. *Seaboard Air Line Ry.*, 139 N. C. 303, 4
Ann. Cas. 214, and note, 51 S. E. 975; *Winczewski* v. *Winona &
W. Ry. Co.*, 80 Minn. 245, 83 N. W. 159; *Pullman Palace Car
Co.* v. *Laack*, 143 Ill. 242, 18 L. R. A. 215, 32 N. E. 285; *Broderick* v. *Detroit U. R. S. & D. Co.*, 56 Mich. 261, 56 Am. Rep.
382, 22 N. W. 802; *Louisville & N. R. Co.* v. *Seibert's Admr.*
(Ky.), 55 S. W. 892; *Pennsylvania Co.* v. *McCaffrey*, 139 Ind.

430, 29 L. R. A. 104, 38 N. E. 67; 1 Thompson's Commentaries on the Law of Negligence, sec. 199.)   In *Maltbie* v. *Belden,* 167 N. Y. 307, 54 L. R. A. 52, 60 N. E. 645, the rule which we have announced is affirmed, but it was held in that particular case that the evidence disclosed such negligence on the part of the injured person as to preclude recovery.

Of course the rule just stated cannot be invoked to secure immunity from the charge of contributory negligence.   The injured person's acts in attempting to rescue property are to be viewed in the same light as his acts in discharging the duties [7] primarily devolving upon him by virtue of his employment.   In other words, the question in every case where the defense of contributory negligence is raised must be: Did the injured employee, in attempting to rescue his master's property, measure up to the standard of ordinary care and prudence?

While our conclusion is that the jury was justified in finding that Hollenback was engaged in the discharge of duties within the scope of his employment at the time he received his injury, we are not to be understood as approving instruction No. 5 given to the jury, to the effect: "If you believe from the evidence that there was no necessity for the deceased to be in the position in which he was when electrocuted, and that he was not at the time working in the employ of the defendant company, then and in that event the plaintiff cannot recover, and your verdict must be for the defendant."   This instruction was submitted in lieu of one requested by the defendants as follows: "If you believe from the evidence that the deceased voluntarily, and not at the instance or request of the defendants, or either of them, went upon the surface of the water on a raft, and while there came in contact with the said live wire, then he was not [8] at that time working in the employ of the defendant company, and for injuries so received the plaintiff cannot recover, and your verdict must then be for the defendants."

In our opinion, the requested instruction was clearly erroneous, while the one given could not have been of much value in enlightening the jury upon the principal question for deter-

mination.    But a more specific instruction was not requested, and appellant cannot complain.

The judgment and order are affirmed:

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER con-cur.