NELSON, APPELLANT, *v.* NORTHERN PACIFIC RY. CO.
ET AL., RESPONDENTS.

(No. 3,492.)

(Submitted March 30, 1915. Decided April 17, 1915.)

[148 Pac. 338.]

*Personal Injuries — Master and Servant — Railroads — Federal
Liability Act—Warning Signals—Excessive Speed—Contribu-
tory Negligence—Admissions.*

Personal Injuries—Negligence—Proximate Cause—Pleading and Proof.
  1.  In a personal injury action by an employee against his employer,
whether based upon a breach of duty expressly enjoined by statute or
upon a violation by the latter of his common-law duty; the plaintiff
must allege facts and circumstances disclosing a breach of duty, and
establish by his evidence that such breach was the proximate cause of
his injury.

  [As to proximate and remote causes of injury from negligence, see
notes in 50 Am. Rep. 569; 36 Am. St. Rep. 807.]

Same—Railroads—Arrival of Trains—Posting Notice—Statutory Require-
ments.
  2.  *Quaere:* Was Chapter 105, Laws of 1909, page 145, requiring rail-
way companies to post notices at stations along its line of the arrival
of passenger trains, enacted for the protection of employees as well
as for the convenience of the public, and may a violation of such Act
be alleged as negligence in an action for personal injuries by a railway
employee, brought under the Federal Employers' Liability Act (Chap.
149, 35 Stat. 64)?

  [As to duty of railroad companies to keep their stations safe for
passengers and others, see note in 29 Am. St. Rep. 55.]

Same—Railroads—Warning Signals—Duty of Employer.
  3.  Employees of railway companies come within the protection of the
rule that signals must be given of the approach of trains to warn per-
sons on the track or in dangerous proximity thereto.  Failure to ob-
serve the precaution when ordinary prudence and diligence require it is
evidence of negligence.  Where the statute enjoins the duty to warn,
failure to obey its mandate is negligence *per se.*

Same—Railroads—Warning Signals—Extent of Duty.
  4.  While in the open country and at a distance from public cross-
ings, where the view is unobstructed, and the train is on time, the duty
to give precautionary signals may be relaxed or entirely dispensed with,
even though a section crew is known to be ahead on the track—the
members thereof being presumed to guard themselves against danger—
warning of the approach of the train must be given, where the view
is obstructed and the train is not running on schedule time.

Same—Proximate Cause—Evidence—Insufficiency.
  5.  Alleged negligence on the part of defendant company's locomotive
engineer in failing to give warning of the approach of his train, *held*
not to have been a proximate cause of plaintiff's injury, the evidence
disclosing that the latter observed the approach of the train in ample
time to get out of danger's way.

Same—Railroads—Excessive Speed of Train—Negligence.

6. The movement of a passenger train at a higher rate of speed than that allowed by the schedule is not negligence *per se;* hence where a section foreman alleged excessive speed as an element of negligence resulting in the collision in which he was injured, and testified that the train was running at a speed of from fifty to sixty miles an hour, but omitted to show that the engineer did not use every facility at his command to check the speed upon observing plaintiff, or that because of the speed maintained he could not have avoided the collision, he failed to make out a *prima facie* case of negligence in this respect and was properly nonsuited.

[As to violation of statute or ordinance limiting speed of train, see note in Ann. Cas. 1912D, 1107.]

Same—Employer's Liability—Federal Act—Contributory Negligence.

7. In an action for personal injuries brought under the Federal Employers' Liability Act, a plea of contributory negligence is not available in any case, except to diminish the amount of damages, and may not be interposed for any purpose in cases in which the violation of a statute enacted for the safety of employees has contributed to the injury.

[As to what is "accident arising out of and in course of employment" within Employers' Liability Act, see note in Ann. Cas. 1914D, 1284.]

Same—Contributory Negligence—Plea not Admission of Negligence.

8. A plea of contributory negligence, when coupled with a denial, involves merely a hypothetical admission for the purpose of the plea, and does not relieve the plaintiff of the burden of proving negligence on the part of the defendant in some one or more of the particulars alleged in the complaint.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

Action by Lars M. Nelson against the Northern Pacific Railway Company and J. T. Sheedy. From a judgment of nonsuit, and from an order denying him a new trial, plaintiff appeals. Affirmed.

*Mr. E. A. Carleton,* for Appellant, submitted a brief and argued the cause orally.

In the following cases it was expressly held that railroad employees are entitled to the same protection as persons who are not such employees in crossing railroad tracks within the city limits in the performance of their duties, under a city ordinance which required that the bell on the engine be rung continuously while the train was within the city limits: *Illinois Cent. Ry. Co. v. Gilbert,* 157 Ill. 354, 41 N. E. 724; *Gulf etc. Ry. Co. v. Calvert,*

11 Tex. Civ. App. 297, 32 S. W. 246; *Houston etc. Ry. Co.* v. *Burnett,* 49 Tex. Civ. App. 244, 108 S. W. 404; *Louisville etc. Ry. Co.* v. *Schroader* (Ky. App.), 113 S. W. 874; *Illinois etc. Ry. Co.* v. *McIntosh,* 118 Ky. 145, 80 S. W. 496, 81 S. W. 270; *International etc. Ry. Co.* v. *Tisdale,* 39 Tex. Civ. App. 372, 87 S. W. 1063; *Indiana etc. Ry. Co.* v. *Otstot,* 113 Ill. App. 37, affirmed in 212 Ill. 429, 72 N. E. 387. Plaintiff had the right, under the authorities, to rely on the company's performance of its statutory duty to bulletin the train and to comply with the law. (*Schultz* v. *Chicago & N. W. Ry. Co.,* 44 Wis. 638; *Cleveland etc. Ry. Co.* v. *Powers,* 173 Ind. 105, 88 N. E. 1073, 89 N. E. 485; *Pittsburgh etc. Ry. Co.* v. *Rogers,* 45 Ind. App. 230, 87 N. E. 28.) A violation of statutes or ordinances relating to the movement and running of trains is not a risk assumed by a railroad employee, but, on the contrary, the railway company owes to its employees the duty to obey the law. (*Pittsburgh etc. Ry. Co.* v. *Moore,* 152 Ind. 345, 44 L. R. A. 638, 53 N. E. 290.)

In the absence of any law, statute or city ordinance regarding the ringing of the bell or sounding the whistle, it is incumbent upon the railway company to make and enforce all reasonable rules and regulations to guard against accidents at railway crossings and at all dangerous places. (*Dick* v. *Indianapolis etc. Ry. Co.,* 38 Ohio St. 389; *McKenna* v. *Missouri Pacific Ry. Co.,* 54 Mo. App. 161.)

As to fencing statutes: Employees are entitled to the benefit of them the same as anybody else. (*Quackenbush* v. *Wisconsin etc. Ry. Co.,* 62 Wis. 411, 22 N. W. 519.) The rule in New York state is the same. There the court of appeals holds that the duty to fence is one which exists as to all the world, and that where a brakeman is injured by the collision of his train with an animal which has come upon the track through a defective fence, the company is liable for the damages. (*Donnegan* v. *Erhardt,* 119 N. Y. 468, 7 L. R. A. 527, 23 N. E. 1051; *Mendizabal* v. *New York etc. Ry. Co.,* 89 App. Div. 386, 85 N. Y. Supp. 896; *Atchison etc. Ry. Co.* v. *Reesman,* 60 Fed. 370, 23

L. R. A. 768, 9 C. C. A. 20; *Hayes* v. *Michigan Cent. R. Co.,* 111 U. S. 228, 28 L. Ed. 410, 4 Sup. Ct. Rep. 369; *Chicago etc. Ry. Co.* v. *Wise,* 206 Ill. 453, 69 N. E. 500; *Fleming* v. *St. Paul etc. Ry. Co.,* 27 Minn. 111, 6 N. W. 448; *Louisville etc. Ry. Co.* v. *Bodine,* 109 Ky. 509, 56 L. R. A. 506, 59 S. W. 740; *Camp* v. *Chicago, Great Western Ry. Co.,* 124 Iowa, 238, 99 N. W. 735; *Hoffard* v. *Illinois Cent. R. Co.,* 138 Iowa, 543, 16 L. R. A. (n. s.) 797, 110 N. W. 446; *Chicago etc. Ry. Co.* v. *Lawrence,* 169 Ind. 319, 79 N. E. 363, 82 N. E. 768.)

Appellant insists that this record discloses that the defendants have admitted and confessed that they were negligent. This being true, the action of the court in sustaining the motion for a nonsuit was error. (*Birsch* v. *Citizens' Electric Co.,* 36 Mont. 574, 93 Pac. 940; *Nilson* v. *City of Kalispell,* 47 Mont. 416, 132 Pac. 1133.)

Under the facts of this case, the alleged release was void. (See *Boutten* v. *Wellington & P. Ry. Co.,* 128 N. C. 337, 38 S. E. 920, 13 Am. Neg. Rep. 513; *Dorsett* v. *Clement-Ross Mfg. Co.,* 131 N. C. 254, 42 S. E. 612, 13 Am. Neg. Rep. 514; *Clayton* v. *Consolidated Traction Co.,* 204 Pa. 536, 54 Atl. 332; *Houston etc. Ry. Co.* v. *Milam* (Tex. Civ. App.), 58 S. W. 735; *Great Northern Ry. Co.* v. *Kasischke,* 104 Fed. 440, 43 C. C. A. 626; *Davis* v. *Diamond Carriage etc. Co.,* 146 Cal. 59, 79 Pac. 596; *Colorado City* v. *Liafe,* 28 Colo. 468, 65 Pac. 630; *Burik* v. *Dundee Woolen Co.,* 66 N. J. L. 420, 49 Atl. 442; *Lusted* v. *Chicago etc. Ry. Co.,* 71 Wis. 391, 36 N. W. 857.) *O'Donnell* v. *Clinton,* 145 Mass. 461, 14 N. E. 747, is the case of a release being avoided for fraud where the plaintiff was an illiterate man. (*Missouri Pac. Ry. Co.* v. *Goodholm,* 61 Kan. 758, 60 Pac. 1066; *O'Brien* v. *Chicago etc. Ry. Co.,* 89 Iowa, 644, 57 N. W. 425; 6 Thompson on Negligence, sec. 7376; 5 Labatt's Master & Servant, 2d ed., p. 6021.) Whether or not there was any ratification is a question for the jury. (*Missouri etc. Ry. Co.* v. *Brantley,* 26 Tex. Civ. App. 11, 62 S. W. 94; 24 Cyc. 1066, and note 72; *Abrahams* v. *Los Angeles Traction Co.,* 124 Cal. 411, 57 Pac. 216; *Gibson* v. *Western N. Y. etc. R. R.,* 164 Pa.

142, 44 Am. St. Rep. 586, 30 Atl. 308; *Michalsky* v. *Centennial Brewing Co.*, 48 Mont. 1, 134 Pac. 307.)   That the plaintiff did not pay back or tender the $300 paid in the settlement is no defense.   Under the authorities, the jury would be instructed to deduct that sum from any verdict they should find the plaintiff was entitled to recover.   (*Merrill* v. *Pike*, 94 Minn. 186, 102 N. W. 393; *Bjorklund* v. *Seattle Electric Co.*, 35 Wash. 439, 1 Ann. Cas. 443, 77 Pac. 727, 17 Am. Neg. Rep. 139; *Rockwell* v. *Capital Traction Co.*, 25 App. Cas. (D. C.) 98, 4 Ann. Cas. 648.)   See, also, *Michalsky* v. *Centennial Brewing Co.*, 48 Mont. 1, 134 Pac. 307, which disposes of many questions raised on this appeal and canvassed in this brief.

*Messrs. Gunn, Rasch & Hall,* for Respondents, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

The case made here is this: The plaintiff was fully aware of the approach of the train when it was yet nearly a half mile away, and the hand-car could have been removed with entire safety to plaintiff and his men if Mike Leopardi had not fallen down and the men at the east end of the car had done as well as the men at the west end.   That they did not succeed was not due to any act or omission of the defendants, and neither the failure, if there was such failure, to blow the whistle, nor ring the bell, nor the speed of the train, nor the omission to report the train late at Garrison, if the statute requiring such reports to be made is applicable at all to a case of this kind, had anything to do with the accident, and the plaintiff's injuries were not proximately caused by any or either of them.   (*Texas etc. Ry. Co.* v. *Eason*, 92 Fed. 553, 34 C. C. A. 530; *Pope* v. *Wabash R. Co.*, 242 Mo. 232, 146 S. W. 790; *McManamee* v. *Missouri Pac. Ry. Co.*, 135 Mo. 440, 37 S. W. 119; *Rutherford* v. *Iowa Central Ry. Co.*, 142 Iowa, 744, 121 N. W. 703; *Central of Georgia Ry. Co.* v. *McKey*, 13 Ga. App. 477, 79 S. E. 378.)

That statutory requirements such as make it the duty of railway companies in this state to report trains running behind schedule time are not applicable to employees is well settled.

Thus the statutory duty of keeping a flagman at street crossings does not apply to employee. (*Kansas City etc. Ry. Co.* v. *Kirksey,* 60 Fed. 999, 9 C. C. A. 321; *Rohback* v. *Pacific R. R.,* 43 Mo. 187) ; nor speed ordinances (*Louisville etc. Ry. Co.* v. *Hairston,* 122 Ga. 372, 50 S. E. 120; *Louisville etc. Ry. Co.* v. *Holland,* 164 Ala. 73, 137 Am. St. Rep. 25, 51 South. 365; *Birmingham Ry. etc. Co.* v. *Mosely,* 164 Ala. 111, 51 South. 424;. *Wright* v. *Southern Ry. Co.,* 80 Fed. 260) ; nor statutory warning signals (*Norfolk etc. R. Co.* v. *Gesswine,* 144 Fed. 56, 75 C. C. A. 214; *Rogers* v. *Cincinnati etc. R. Co.,* 136 Fed. 573, 69 C. C. A. 321; *Lepard* v. *Michigan Central Ry. Co.,* 166 Mich. 373, 130 N. W. 668; *Hitz* v. *St. Louis etc. Ry. Co.,* 152 Mo. App. 687, 133 S. W. 397; *O'Brien* v. *Erie R. Co.,* 210 N. Y. 96, 103 N. E. 895) ; nor the duty imposed by statute to fence the right of way (*Carper* v. *Norfolk etc. Ry. Co.,* 78 Fed. 94, 35 L. R. A. 135, 23 C. C. A. 669; *Newson* v. *Norfolk etc. R. Co.,* 81 Fed. 133).

The defendants did not by their pleadings admit negligence. (See *Kansas City etc. Ry. Co.* v. *Crocker,* 95 Ala. 412, 11 South. 262; *McDonald* v. *Montgomery etc. Ry. Co.,* 110 Ala. 161, 20 South. 317; *Louisville etc. Ry. Co.* v. *Pearce,* 142 Ala. 680, 39 South. 72.) We do not dispute the correctness of the proposition that the plea of contributory negligence on the part of plaintiff, when standing alone, is one in the nature of confession and avoidance, and assumes and presupposes negligence on the part of the defendant. But, when pleaded in conjunction with a general denial, there is not an admission of negligence on the part of defendants. (See, also, *Jackson* v. *Natchez etc. R. Co.,* 114 La. 981, 108 Am. St. Rep. 366, 70 L. R. A. 294, 38 South. 701; *Clemens* v. *St. Louis etc. R. Co.,* 35 Okl. 667, 131 Pac. 169; *Leavenworth Light & H. Co.* v. *Waller,* 65 Kan. 514, .70 Pac. 365; 5 Ency. Pl. & Pr. 12, "Under Code"; 29 Cyc. 582.)

Plaintiff assumed the risk. (*Sullivan* v. *Fitchburg R. Co.,* 161 Mass. 125, 36 N. E. 751; *Jolly* v. *Detroit etc. R. Co.,* 93 Mich. 370, 53 N. W. 526; *Texas & P. Ry. Co.* v. *Myers* (Tex. Civ.), 125 S. W. 49; *Molt* v. *Northern Pac. Ry. Co.,* 44 Mont. 471, 120 Pac.

809; 2 Bailey on Personal Injuries, par. 356.)   The action is based upon the Federal Employers' Liability Act, which has superseded state legislation.   (*Melzner* v. *Northern Pac. Ry. Co.*, 46 Mont. 277, 127 Pac. 1002.)   By the provisions of section 4 of that Act, the defense of assumption of risk is left unimpaired and the same as at the common law, except in cases, "where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." (*Mondou* v. *New York etc. R. Co.*, 223 U. S. 1, 38 L. R. A. (n. s.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169; *Neil* v. *Idaho etc. R. Co.*, 22 Idaho, 74, 125 Pac. 331.)

The settlement between plaintiff and defendant company was a complete discharge of any claim or demand which the plaintiff had, and this is true, even though there was a failure to perform a promise for light employment, if that was one of the terms of the settlement.   (34 Cyc. 1054, 1077.)   The failure to perform the promise to give light employment was a breach of the alleged settlement agreement, and the plaintiff's remedy is on the contract.   (*Johnson* v. *Charleston etc. Ry. Co.*, 58 S. C. 488, 36 S. E. 851; *Hobbs* v. *Brush Electric Light Co.*, 75 Mich. 550, 42 N. W. 965; *Pioneer Tel. & Tel. Co.* v. *Grider*, 34 Okl. 206, 124 Pac. 949.)   In any event, a contract of settlement having been made, but only partially performed, no action for injuries could be maintained without a rescission of the contract and a return of the consideration which had been received. (Sec. 5065, Rev. Codes; *Cotter* v. *Butte etc. Smelting Co.*, 31 Mont. 129, 77 Pac. 509; *McNinch* v. *Northwest Thresher Co.*, 23 Okl. 386, 138 Am. St. Rep. 803, 100 Pac. 524; *Babcock* v. *Farwell*, 245 Ill. 14, 137 Am. St. Rep. 284, 19 Ann. Cas. 74, 91 N. E. 683; *Memphis St. R. Co.* v. *Giardino*, 116 Tenn. 368, 8 Ann. Cas. 176, 92 S. W. 855; *Louisville etc. Ry. Co.* v. *McElroy*, 100 Ky. 153, 37 S. W. 844; *Modern Woodmen* v. *Vincent*, 40 Ind. App. 711, 14 Ann. Cas. 89, 80 N. E. 427, 82 N. E. 475; *Hinchman* v. *Matheson Motor Car Co.*, 151 Mich. 214, 115 N. W. 48; *Whitwell* v. *City of Aurora*, 139 Mo. App. 597, 123 S. W. 1045;

*Ambellan* v. *Barcalo Mfg. Co.*, 118 App. Div. 547, 102 N. Y. Supp. 993; *Mahr* v. *Union Pac. R. Co.*, 170 Fed. 699, 96 C. C. A. 19.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The injuries for which recovery is sought in this action were sustained by the plaintiff during the course of his employment by the defendant railway company as section foreman. The action was brought under the Federal Employers' Liability Act, approved April 22, 1908 (Chap. 149, 35 Stat. 64; U. S. Comp. Stats. (Supp. 1911), p. 1322, Fed. Stats. Ann. (Supp. 1909), p. 584), as amended by the Act approved April 5, 1910 (Chap. 143, 36 Stat. 291, U. S. Comp. Stats. (Supp. 1911), p. 1325, 1 Fed. Stats. Ann. (Supp. 1912), p. 335). It is alleged in the complaint that the defendant railway company, hereafter referred to as the company, was the owner and was engaged in the operation of a line of railway as a common carrier in interstate commerce, and that at the time of his injuries plaintiff was in its employ in that business. The evidence discloses these facts:

Plaintiff came to this country from Norway in 1906. He is not well enough acquainted with the English language to read and write it. He was in the employ of the company as a section-hand, from May of that year until July, 1908. He again entered the company's service as section foreman in November, 1910, and continued therein until June 8, 1911, when he was injured. He had become thoroughly familiar with his duties. There was under his charge a crew of seven men. The work allotted to him and his crew was to keep in order a section of the line of the company's railway, extending about five miles west of Garrison, in Powell county, a regular stopping station for all trains. The railway has a double track from this station to Missoula. The headquarters of plaintiff and his crew were at Garrison. A passenger train designated as No. 41 was due to leave Garrison for the west, according to the regular schedule,

at 6:50 o'clock in the morning of June 8. At 6:55 o'clock, before taking out his crew, the plaintiff went to the station to get his mail and ascertain the movement of trains, particularly of train No. 41, the leaving time of which he knew. On this morning it was behind schedule time, but that fact was not noted on the bulletin-board kept at the station. If the train was on time, plaintiff with his crew followed it from the station, the work for the day beginning at 7 o'clock; otherwise it was necessary to keep a lookout for it to avoid being run down by it. He could observe the movement of the train because it was visible from his house as it approached and left the station. He supposed that the train had left the station, though it does not appear that he made any effort to ascertain whether this was so, other than to consult the board. He left the station with his crew at 7 o'clock, riding on a hand-car. He made three stops as he proceeded, one for the purpose of inspecting a bridge, and the others to listen for the coming of a train. These stops were necessary because the car made some noise and plaintiff was keeping a careful lookout for trains. Each of them consumed some minutes. After passing mile-post 54 a stop was made to listen, but no train being within hearing, plaintiff proceeded, all the members of the crew "pumping" the car, four of them facing to the west and four to the east. There are three curves in the line of track between mile-posts 52 and 55, the last known as the "Big Bend," a sharp curve about a third of a mile in length and ending near the beginning of the mile between posts 54 and 55. After the last stop the car had been kept going at a speed of about five miles an hour; for a distance of half a mile to a point midway between posts 54 and 55. At this point the attention of plaintiff was called by one of the crew to the approach of belated train 41. Looking back ten seconds later he saw the smoke of the engine and a second later the train itself approaching at a speed estimated by him to be from 50 to 60 miles an hour. When he saw the smoke, the train was about one-fourth of a mile away. Effort was at once made to stop the car, and it was stopped within a short

distance the length of which plaintiff could not state further than to say within three rail-lengths, or ninety-nine feet. Two of the men left the car when the approach of the train was first noticed; two others sought places of safety as soon as the car came to a stop. The plaintiff, assisted by the three who remained, attempted to remove the car to the other track. He and one of the men, Leopardi, took hold of the west end, the other two at the east end. As they were lifting the car, Leopardi fell, thus hindering the removal of it to the other track. The plaintiff again observed the train when it was a distance of from 200 to 300 feet away. He "felt that the way the train was going, there was time enough for the men to lift the car off the track in between the two tracks." Plaintiff and Leopardi succeeded in getting their end off the track and beyond striking distance of the train. The men at the other end did not succeed in moving it beyond striking distance, with the result that the train in passing struck one corner of it and by the impact hurled it against plaintiff, breaking both his arms and otherwise injuring him. Leopardi was killed. Plaintiff expressed the opinion that the car could have been gotten safely off the track, and out of the line of danger, if the men at the other end had been active. He said: "If the men behind had done as well as we men in front we could have got the car cleared from the track." The car with the tools upon it was 600 or 700 pounds in weight. The plaintiff did not hear a whistle or bell at any time, though his hearing was good. Where he was, the whistle could be heard about a mile. Questioned as to why he did not leave the car and go into a place of safety, he stated: "A. In charge, as section foreman, I was responsible for hand-car and for the rest of the company's property that I was carrying. That is the first thing, and the last thing was 41 was behind,—passenger train was behind and if I had skiddooed and left the hand-car on the track, 41 would have run into it and might be ditched with it. Might have ditched 41 with the hand-car, do you know. Q. Yes; anything else? A. And 41

was loaded with good many people; there might be some injuries and killing.''

It is alleged that the defendants were guilty of negligence in three particulars: (1) In the failure of defendant Sheedy, the engineer in charge, to ring the bell or sound the whistle to notify the plaintiff of the approach of the train so that he could get out of its way; (2) in running the train at a dangerous rate of speed, when, by the exercise of ordinary prudence, defendants should have known that plaintiff would be at or near the place where he was injured, in the discharge of his duties as section foreman; and (3) in the failure of the company to have its employees at Garrison post notice upon the bulletin-board that train 41 was late.

The answer, besides denying the negligence charged, alleges these affirmative defenses: That the plaintiff's injuries were caused by his own negligence; that he was guilty of contributory negligence; that he assumed the risk, and that, subsequent to his injuries, he had released and acquitted the company of liability in consideration of its payment to him of $300. The replication assails the validity of the release on the ground of fraud and deceit. At the close of plaintiff's evidence the court granted a nonsuit on the ground, among others, that the complaint does not allege, and the evidence fails to disclose, culpable negligence on the part of defendants, and directed judgment accordingly. The plaintiff has appealed from the judgment and an order denying his motion for a new trial.

It is the rule, recognized by the courts everywhere that, in order for plaintiff to recover for personal injuries suffered by reason of a breach of duty owed to him by defendant, it is [1] indispensably necessary that he allege facts and circumstances disclosing such breach of duty, and also establish by his evidence that it was the proximate cause of his injury. (*Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Bracey* v. *Northwestern Imp. Co.*, 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706; 4 Labatt on Master & Servant, sec. 1570.) The rule applies as well to those breaches of

duty expressly enjoined by statute upon employers for the protection of their employees in the operation of railways and the prosecution of other hazardous pursuits, as to violations of those obligations which, in the absence of statutory provisions, the employer is under to his employees.   (*Monson* v. *La France C. Co., supra.*)

At the hearing in this court, counsel for plaintiff stated that [2] he would not rely upon the charge that the company was guilty of negligence in failing to have notice posted on the bulletin-board at Garrison that train No. 41 was behind schedule time, for the reason that, though the statute requiring the hour of the arrival of passenger trains to be posted at all stations along the lines of railways in this state (Laws 1909, Chap. 105, p. 145), was enacted for the protection of railway employees as well as for the convenience of the public, it has no application to cases arising under the federal statute.   We are thus relieved of the necessity of determining the question whether the statute was intended as a protective provision, and whether, if so, a violation of it may be alleged as negligence under the federal statute.   Neither is it necessary, as we view the case, to analyze the complaint and determine the contention of counsel for the defendants that its allegations are not sufficient, from any point of view, to support a judgment.   The vital question in the case is whether the evidence furnishes a basis for the inference that plaintiff's injuries were proximately caused by the failure of the engineer to ring the bell or sound the whistle as he entered upon the Big Bend curve, or by the high rate of speed at which he was running the train.

The purpose to be served by warning signals is to give notice [3] of the approach of trains so that persons on the track or in dangerous proximity thereto may protect themselves from danger.   A failure to observe the precaution when ordinary prudence and diligence require it, even in the absence of a statutory injunction, is evidence of negligence; when there is such an injunction, the mere failure to obey it is negligence *per se.* (*Hunter* v. *Montana Cent. Ry. Co.*, 22 Mont. 525, 57 Pac. 140.)

Employees come within the protection of the rule; otherwise, by entering into the employment of a railway company an employee wholly releases it from the duty it owes to every member of the public whose business or pleasure may bring him in dangerous proximity to the line of railway.  It may not apply so strictly in favor of employees as other persons, because in the performance of their duties they must be in the company's yards or on or near the track in other places, and for this reason must exercise care and diligence for their own safety, commensurate with the circumstances, to the end that the movement of trains may not be obstructed.  Nevertheless, the measure of duty which the company owes to them must be determined by the circumstances as they exist in each particular case. [4]  (*Neary* v. *Northern Pac. Ry. Co.*, 37 Mont. 461, 19 L. R. A. (n. s.) 446, 97 Pac. 944.)  Ordinarily, in the open country and at a distance from public crossings where the track is straight and the view unobstructed, and the train is on time, the duty of maintaining a lookout and of giving precautionary signals may be relaxed or entirely dispensed with, even when the engineer in charge of the train knows, or is presumed to know, that a section crew is ahead on the track.  He may presume that the members of the crew will maintain a lookout and guard against danger to themselves and also to the property of the company in their charge, as well as the passengers being carried upon the train.  When, however, the surroundings are such that the view is obstructed and the approach of a train cannot be readily observed and the train is not running on schedule time— which was the situation in this case—it would seem that the dictates of ordinary prudence would require some warning of its approach to be given.  It is not necessary to consider here, however, the extent to which the rule applies generally or the character of particular cases to which it applies.

The only evidence in the record as to the failure of the defendant Sheedy to give warning of the approach of his train is [5]  the statement by the plaintiff that his hearing was good, that he was on the lookout for a train, that at that place the

whistle could be heard a mile, and that he did not hear any signal. This statement may be of doubtful evidentiary value in view of the fact that the hand-car was in motion and made some noise, because it is questionable that the plaintiff was so situated that he would have heard it had a signal been given. (1 Wigmore on Evidence, sec. 664.) Yet, accepting it as sufficient to show that none was in fact given, the failure to give it was clearly not the cause of the collision. The plaintiff saw the train when it was at such a distance that he had ample time to get out of its way. That this is true is demonstrated by the fact that four members of the crew did get to places of safety,— two of them after the car was brought to a stop. That plaintiff thought so is further demonstrated by the fact that after the train had approached to within a distance of from 200 to 300 feet, he was of the opinion that, considering the rate at which it was approaching, there was yet ample time to get the car off the track also. That he was mistaken in this and was injured in an abortive attempt to save the car as well as to prevent injury to the train and its passengers, does not show, or tend to show, that the injury was caused by the failure of the engineer to give a warning signal. Having himself observed the danger in ample time to save himself, he cannot maintain the claim that negligence, which did not in any way contribute to it, was the cause of his injury. The delinquency of the engineer, though negligence, was a condition and not an effective cause.

That the engineer was moving his train at a high rate of [6] speed, possibly in excess of the schedule rate, was not *per se* negligence. It is a matter of common knowledge that when a train is late, the schedule rate is not adhered to. (*Hoskins* v. *Northern Pac. Ry. Co.,* 39 Mont. 394, 102 Pac. 988,) In attempting to save his car, prevent injury to it and a possible derailment of the train, the plaintiff was within the scope of his employment. (*Hollenback* v. *Stone & Webster Eng. Corp.,* 46 Mont. 559, 129 Pac. 1058.) It was his duty to make every effort compatible with his own personal safety to rescue his car

from destruction or injury, and also to protect the train with those in charge of it and the passengers thereon from the danger incident to a collision. (*Hollenback* v. *Stone & Webster Eng. Corp., supra.*) He was not under any legal obligation to do this; but by his effort to do it he did not, as a matter of law, incur the imputation of negligence. (*Da Rin* v. *Casualty Co. of America,* 41 Mont. 175, 137 Am. St. Rep. 709, 27 L. R. A. (n. s.) 1164, 108 Pac. 649; *Bracey* v. *Northwestern Imp. Co.,* 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706.) When the attempt is to rescue a person, it is necessary to a recovery by the rescuer for injury suffered by him, to show precedent negligence toward the person in peril or toward himself after the attempt has begun. When this appears, it is a question for the jury whether the attempt was made under such circumstances as to constitute rashness in the judgment of prudent persons. In such case a person must act promptly, if at all, because a moment's delay will be fatal. There is no time for deliberation. The law has such a high regard for human life, that it will indulge the presumption that one who has risked his life for the safety of another, was prompted by dictates of humanity rather than by a rash disregard of his own safety. (*Bracey* v. *Northwestern Imp. Co., supra.*) The same rule applies, though perhaps with less indulgence, to a case in which an employee attempts to save the property of his employer. As we have seen, the high rate of speed did not in itself constitute negligence. There is neither allegation nor proof that the engineer observed the effort of the plaintiff and his companions to remove the car. If it be said that the law would, under the circumstances, presume that he observed the situation and, in the exercise of reasonable care, should have checked the speed of the train and brought it to a stop if necessary, there is no word of proof that he failed to use every facility at his command for this purpose, or that, because of the high rate of speed at which he was going, he could not have avoided the collision. Therefore, there is no proof of negligence upon which a recovery may be predicated. So far as the record discloses, the sole cause of the injury was the ac-

cident which befell Leopardi, causing delay in the effort to remove the car, and the lack of effective activity or haste by the two members of the crew at the east end of it by reason of which a corner of it was left in striking distance of the engine. Upon the case as made by the evidence, the plaintiff cannot recover and the court properly directed a nonsuit.

Counsel makes the contention seriously that a plea of contributory negligence is an admission of the negligence alleged in the complaint, and that, since, under the federal statute, contributory negligence is not a bar to the action, the nonsuit was improperly granted. Under section 3 of the Act, a plea of con-
[7]  tributory negligence is not available in any case, except to diminish the amount of damages, and may not be interposed for any purpose in cases in which the violation of a statute enacted for the safety of employees has contributed to the injury. (*Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635.)   But the statute does not in anywise affect the office of the plea when it is available, except as expressly indicated.   In the case of *Day* v. *Kelly,* 50 Mont. 306,
[8]  146 Pac. 930, the same contention was made as counsel makes here.   The office and effect of such a plea was examined in the light of the decisions on the subject, and it was determined that the plea, when coupled with a denial, involves merely a hypothetical admission, and does not in any measure relieve the plaintiff of the burden of proving negligence on the part of the defendant in some one or more of the particulars alleged in the complaint.   The contention, therefore, cannot be sustained.

Counsel has assigned error upon several rulings of the court in excluding evidence.   We do not think that plaintiff was prejudiced by any of them.   Such items as were even remotely competent and material were subsequently admitted without question.   The others were properly excluded as immaterial.

In view of our conclusion on the other features of the case, it is not necessary to consider whether the evidence touching the execution of the release upon which defendants rely was

sufficient to show that the company's claim agent practiced fraud or deceit upon the plaintiff.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

(Submitted March 30, 1915.  Decided April 20, 1915.)