SMITH, ADMINISTRATRIX, APPELLANT, *v.* CHICAGO, MIL-
WAUKEE & ST. PAUL RY. CO., RESPONDENT.

(No. 4,510.)

(Submitted October 31, 1921. Decided December 5, 1921.)

[202 Pac. 766.]

*Personal Injuries—Master and Servant—Safe Place to Work—*
*Contributory Negligence—Proximate Cause.*

Personal Injuries—Master and Servant—Safe Place to Work—Contribu-
tory Negligence—Proximate Cause—Evidence—Insufficiency.
   1.   In an action for damages for the fatal injury of a machinist
helper in defendant railway company's shops, evidence *held* to show
that the injury was proximately caused by his own reckless haste in
releasing a chain which held in a perpendicular position a locomotive
drive-wheel tire weighing between 1,200 and 1,400 pounds, which fell
upon him, and was not due to the alleged negligence of defendant
in failing to provide a safe place for him in which to work.

Same—Proximate Cause—Pleading and Proof.
   2.   In an action to recover damages for personal injuries suffered
by reason of a breach of duty owed to him by defendant, plaintiff
must allege facts and circumstances disclosing a breach of duty and
establish by his evidence that such breach was the proximate cause
of the injuries.

*Appeal from District Court, Custer County; C. J. Dous-*
*man, Judge.*

ACTION by Edith Smith, as administratrix of the estate of
David M. Smith, against the Chicago, Milwaukee & St. Paul
Railway Company. Judgment for defendant on an instructed
verdict and plaintiff appeals. Affirmed.

*Mr. Sharpless Walker* and *Mr. John P. Devancy,* for Ap-
pellant, submitted a brief and one in reply to that of Respond-
ent; *Mr. Walker* argued the cause orally.

It was the defendant's duty to exercise ordinary care and
diligence in providing plaintiff's intestate with a reasonably
safe place to work, having in view the surrounding facts
and circumstances, the nature of the work and time of the
performance thereof. (*O'Brien* v. *Corra-Rock Island Min. Co.,*

40 Mont. 212, 105 Pac. 724; *Kimbol* v. *Industrial Acc. Com.*, 173 Cal. 351, Ann. Cas. 1917E, 312, L. R. A. 1917B, 595, 160 Pac. 150; *Kroeger* v. *Marsh Bridge Co.*, 138 Iowa, 376, 116 N. W. 125; *Thomas* v. *Wisconsin Cent. Ry. Co.*, 108 Minn. 485, 23 L. R. A. (n. s.) 954, 122 N. W. 456; *Lavartue* v. *Ely Lumber Co.*, 213 Mass. 65, 99 N. E. 469; *Atkins* v. *Madry*, 174 N. C. 187, 93 S. E. 744; *Poos* v. *Fred Krug Brewing Co.*, 101 Neb. 491, 163 N. W. 840; *Moulton* v. *St. Johns Lumber Co.*, 61 Or. 62, 120 Pac. 1057; *Producers Oil Co.* v. *Eaton*, 44 Okl. 55, 143 Pac. 9; *South* v. *Seattle P. A. & W. Ry. Co.*, 99 Wash. 51, 168 Pac. 896.)

Assuming that plaintiff's intestate was guilty of contributory negligence and that such negligence was a proximate cause of the injury, still, if defendant was guilty of negligence which contributed to the accident and injury, plaintiff would be entitled to recover. (Chap. 29, Laws 1911; *Wastl* v. *Montana Union Ry. Co.*, 24 Mont. 159, 61 Pac. 9; *Grand Trunk Western R. Co.* v. *Lindsay*, 201 Fed. 836, 120 C. C. A. 166; *Illinois Cent. R. Co.* v. *Porter*, 207 Fed. 311, 125 C. C. A. 55; *Sandidge* v. *Atchison etc. R. Co.*, 193 Fed. 867, 113 C. C. A. 653; *State* v. *Baltimore etc. Ry. Co.*, 133 Md. 411, 105 Atl. 532; *Grand Trunk Western R. Co.* v. *Poole*, 175 Ind. 567, 93 N. E. 26; *Anest* v. *Columbia & P. S. R. Co.*, 89 Wash. 609, 154 Pac. 1100; 18 R. C. L. 638, 639; 29 Cyc. 528.)

*Mr. Geo. W. Farr*, for Respondent, submitted a brief; *Messrs. Murphy & Whitlock*, of Counsel; *Mr. A. N. Whitlock* argued the cause orally.

The plaintiff was not entitled to have the case submitted to the jury, unless there was in addition to the fact of the occurrence of the accident some specific testimony which fairly tends to show that the defendant was guilty of negligence which proximately caused the injury complained of. (Labatt on Master & Servant, sec. 835; *Soderman* v. *Kemp*, 145 N. Y. 427, 40 N. E. 212; *Shadford* v. *Ann Arbor etc. R. Co.*, 111 Mich. 390, 69 N. W. 661; *Gulf etc. Ry. Co.* v. *Abbott* (Tex.

Civ.), 24 S. W. 299; *Olsen* v. *Montana Ore P. Co.,* 35 Mont. 400, 89 Pac. 731.)

If plaintiff's testimony leaves either the existence of negligence of the defendant or that such negligence was the proximate cause of the injury in conjecture, it is insufficient to establish plaintiff's case; if the conclusion to be reached from the testimony is equally consistent with some theory inconsistent with either of the issues to be proven, it does not tend to prove within the meaning of the rule above announced. (*Winnicott* v. *Orman,* 39 Mont. 339, 102 Pac. 570; *Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515.)

The mere happening of an accident by which an employee is injured during the course of his employment, standing alone, does not furnish the basis for an inference of culpable negligence. (*Barry* v. *Badger,* 54 Mont. 224, 169 Pac. 34; *Lyon* v. *Chicago, M. & St. P. Ry. Co.,* 50 Mont. 532, 148 Pac. 386.) Negligence must be shown; it will not be presumed. (*Reino* v. *Montana Mineral L. D. Co.,* 38 Mont. 291, 99 Pac. 853.) And the burden of proof is on plaintiff to show negligence. (*Byrnes* v. *Butte Brewing Co.,* 44 Mont. 328, Ann. Cas. 1913B, 440, 119 Pac. 788; *Lyon* v. *Chicago M. & St. P. Ry. Co.,* 50 Mont. 532, 148 Pac. 386; *Gallick* v. *Bordeaux,* 31 Mont. 328, 78 Pac. 583; *Woods* v. *Latta,* 35 Mont. 9, 88 Pac. 402; *Benedick* v. *Potts,* 88 Md. 52, 41 L. R. A. 478, 40 Atl. 1067.)

Negligence never gives rise to a cause of action unless it is the proximate cause of the injury. (*Pure Oil Co.* v. *Chicago, M. & St. P. Ry. Co.,* 56 Mont. 266, 185 Pac. 150.) If the accident was due to the plaintiff's own, and not the company's negligence, then it is not liable. (White on Personal Injuries, sec. 39; *Benage* v. *Lake Shore & M. S. Ry. Co.,* 102 Mich. 72, 60 N. W. 286; Labatt on Master & Servant, sec. 1227.)

The rule is well established that an employee is expected to exercise ordinary care to avoid injury to himself. He is expected to observe the ordinary operation of the laws of

nature, and he is reasonably held to know matters within the common observation and knowledge of a reasonably prudent man. These principles are frequently applied in determining the liability where a servant is injured while lifting a heavy weight or object which he knows is too heavy for him, and it has been frequently held that a master is not liable for injuries caused by overexertion, as the servant knows better than anyone else the limitations of his physical power. In an action brought to recover damages for injuries caused by attempting to lift a hand-car from the track to avoid collision with a train, it was held that the trial court erred in refusing to charge that if the weight of the car and the number of men necessary to handle it was neither open nor patent to common observation, the plaintiff cannot recover. (*St. Louis etc. Ry. Co.* v. *Lemon*, 83 Tex. 143, 18 S. W. 331, 17 Am. Neg. Cas. 645; *Ervin* v. *Northern Pac. Ry. Co.*, 69 Wash. 240, 124 Pac. 690; *Creamus* v. *Great Northern Ry. Co.*, 131 Minn. 34, 154 N. W. 616.) As illustrative that if a servant attempts to hold up or lift a heavy object beyond his capacity, that it is not negligence of the employer if he is injured, but his own act, see *Ferguson* v. *Phoenix Cotton Mills Co.*, 106 Tenn. 236; *Roberts* v. *Indianapolis Street Ry. Co.*, 158 Ind. 634, 64 N. E. 217, 12 Am. Neg. Rep. 387; *International & G. N. Ry. Co.* v. *Figures*, 40 Tex. Civ. App. 255, 89 S. W. 780; *Leitner* v. *Grieb*, 104 Mo. App. 173, 77 S. W. 764; *Stenvog* v. *Minnesota Transfer Ry. Co.*, 108 Minn. 199, 17 Ann. Cas. 240, 25 L. R. A. (n. s.) 362, 121 N. W. 903; *San Antonio Traction Co.* v. *De Rodriquez* (Tex. Civ. App.), 77 S. W. 420; *Worlds* v. *Georgia Ry. Co.*, 99 Ga. 283, 25 S. E. 640.

, MR. JUSTICE COOPER delivered the opinion of the court.

This is an appeal from a judgment in favor of defendant. At the close of plaintiff's evidence in rebuttal, the defendant moved for an instructed verdict upon the ground that the evidence of defendant's negligence was insufficient to take

the case to the jury. From the judgment upon the order sustaining the motion, plaintiff appeals.

The complaint alleges that defendant negligently and carelessly caused and permitted piles and pieces of scrap iron, piston rods, unused material, and refuse to accumulate around and about the place at which it was the duty of its machinists and their helpers, including the deceased, to perform repair work; that the defendant knew of the dangerous, unfit and unsuitable condition so created, and existing, or, in the exercise of reasonable care could have known thereof; that the deceased was not aware, nor by the exercise of reasonable and ordinary care, in pursuit of his employment as machinist's helper could be expected to learn of such condition; that while the latter was engaged in attempting to remove a certain chain from a heavy and cumbersome locomotive wheel, he stumbled and fell, or was thrown by reason of stepping backward into the pile of scrap iron, piston rods, and unused material and refuse, so negligently left there by defendant, and sustained injuries from which he subsequently died.

In another paragraph of the complaint it is alleged that the scrap iron, piston rods, and unused material over which. deceased stumbled, fell and received his injuries were partly covered and concealed by snow, so that it was difficult, if not impossible, for him to have ascertained their presence by visual inspection of the place upon and over which he was obliged to move in order to release the chain from the rim of the driver.

The answer and reply thereto present the following questions: Was the defendant guilty of negligence? Did the deceased assume the risk? Was he guilty of contributory negligence, or did he bring the injury upon himself, exclusively by his own negligence? Since in our opinion the last inquiry must be answered in the affirmative, it is the only one it is necessary to notice.

The evidence given upon the trial disclosed the following [1] facts and conditions: The plaintiff's intestate was a ma-

chinist's helper employed in the shops of the defendant at Miles City. He was familiar with the work for which he was employed and in which he was engaged at the time of his injury. The place in question was an open space about eighty feet wide between the machin-shop and the round-house, upon which were constructed seven or eight tracks, built and maintained by the defendant for the purpose of storing engine-drivers, car-wheels, trucks and other parts of equipment used in the conduct of defendant's business, and in suitable weather, for making repairs thereon as occasion required. On the evening of January 7, between the hours of 7 and 9:30 o'clock, deceased and another helper assisted Croonenberg, the machinist, in taking the tires from a pair of locomotive drive-wheels. The undertaking was carried out by coupling an air-hose leading from an air-tank to a piece of pipe, through which was blown a flame until it had sufficiently expanded the tire to enable it to be knocked off the rim with a sledge-hammer. After the tire was loosened from the rim and fastened with the chain, it was left by the crew, standing nearly perpendicular, but leaning a little toward the machine-shop. It was nearly new, with a rim three and one-half inches in thickness, five or five and one-half feet in diameter measured from the inside, the flange extending above the surface of the tire one and one-half or two inches, and weighed between 1,200 and 1,400 pounds. Croonenberg stated that he steadied the tire with his hand alone; that it could be off of perpendicular about six inches until it got to a point where it could be steadied with the hand; that when they left it the night prior to the accident it was off perpendicular less than six inches as it rested on the flange, and that to turn it from perpendicular you would thrust it back with your foot; that it would not require a lot of strength to hold it; if it was resting on the flange, he thought he could hold it; that he stood in front of the tire and balanced it as it rested on the flange when he put the chain on, and that that was the way everybody did it; that if he took it off himself he

61 Mont.] . Smith v. Chicago etc. Ry. Co. 477

[61 Mont. 471.]

would "bring it out at the bottom, and if it started to fall
he would jump aside and let it fall"; that removing the
chain and returning it to the storehouse was part of the job;
and that the helpers usually did it. He testified also that
"Smith was going to get the chain the next morning. At
the time he was hurt, that is what he was doing. I could
take the chain off alone by putting my hand against the
tire. * * * I put a piece of waste against the tire, and my
hand against the waste, as she was hot. When I did that I
stood right in front of it."

On the morning of January 8, immediately after 7 o'clock,
and at approaching daylight, while deceased was in the act
of removing the chain from around the rim and tire as it
was left the night before, the tire fell over and upon him,
crushing him so severely that his death resulted the follow-
ing evening between 5 and 6 o'clock. At the place of the
accident machinery and equipment were kept piled in places
between the tracks for the purpose of being "worked over
again." . Material that could not be used again was taken to
the scrap pile. It was one of the places used by the defend-
ant for "storing piston rods" and "usable" material, includ-
ing new piston rods, just as they were purchased. As one
of the plaintiff's witnesses stated: "It was the regular place
to keep them." This space is described by Lars Villanger,
another of plaintiff's witnesses, and the helper who assisted
the machinist and the deceased to put on the chain the night
before, as follows: "A wooden platform with a bunch of
tracks on it is lying between the roundhouse and the machine-
shop. The wooden platform lies on the ground. It consists
of two-inch planks. They lie close together. The tracks run
north and south; I could not say for sure how many there
were; about seven or eight. * * * At the point where this
accident happened, the machine-shop wall was about nine feet
from the rail. * * * The snow with reference to this near-
est or west wall or these piston rods was about five feet from
the rail. The snow and ice extends out about three feet to-

ward the track or nearest rail. * * * It had been cleared away where they are working. Well, it wasn't all cleared away where they are working."

John Laney, the next witness, testified: "That was one of the places where the men worked when they had cause to work out there." His account of the happening is as follows: "When I first saw the tire it was tipping slightly, as anything would when pressing towards you, and he merely stepped back to brace himself. He had his hands on the tire; stepped back trying to brace the tire. He was trying to hold over so it would not tip very much when I first seen him. When I first seen it, it wasn't so overbalanced, but what he could have held it, if he could have held his feet. * * * I have handled those tires. They are not so awfully heavy that a man can't brace a whole lot. I don't mean a man can hold one of them, but if they don't press too far towards him, he can brace it back. * * * Before he fell, I don't know what was on the ground."

Clarence Siegert, foreman of the store department at the time of the accident, testifying for defendant, described what he saw of it as follows: "When I first noticed Smith the tire was not beginning to fall. I saw him before the tire started to fall. I did not pay any particular attention to him, though, until the tire fell. I saw him before he started to fall, but that is when I noticed him the most in particular when it started, and he hollered for help. I didn't see his feet trip and catch on anything. As he started back I didn't notice his feet in particular, but I could see him there; that is, I thought that is how it happened that his feet caught, and that made him fall."

By other testimony given by the plaintiff's witnesses, the place of the accident was in the same condition when the tire fell as it had been left the night previous by the machinist, the deceased, and the other helper. What unbalanced the tire no witness ventured to say, because none of them saw it begin to fall. They could not therefore attribute Smith's fall to

conditions about his feet to the exclusion of the weight of the falling wheel. The efforts made to clear up the place before starting the work clearly negative the claim that the accident was due to the failure of the defendant to provide deceased with a safe place to work. Upon this point the testimony of Croonenberg stands alone, and is undisputed. It is as follows: ''The first thing we did, we cleaned out all the unnecessary things we left around there, blower, sheet iron, and pipes and such all, in order to have plenty of room to take that particular tire off. The purpose of cleaning out this stuff I refer to was to make it safe and everything, to make it safe to work around there; to make it safe to knock off the tire so we wouldn't stumble over everything there. The first thing I started to do was to remove material to make it a safe place to work there. I completed my work so far as my knowledge went. I removed the material that I spoke of.''

Interpreting the evidence all in plaintiff's favor, and giving it the force of proven facts, it is impossible to escape the conviction that the accident was due solely to the reckless haste with which deceased went about the task of removing the chain, rather than the position of the piston rods, or the presence of snow and ice beneath his feet.

That the plaintiff produced upon the trial all the evidence available to support the charge of negligence in failing to provide her husband a safe place to work seems quite clear. Yet the proof not only failed to furnish debatable ground upon that phase of the case, but went the other way far enough to establish the fact that the deceased brought the injuries upon himself by his carelessness in removing the chain, thus making escape from the falling tire impossible. Upon this outline of the evidence, we are forced to the conclusion that the efficient proximate cause of Smith's injuries was the removal of the chain, while the tire was unbalanced in his hands, and not the negligence of the defendant in fail-

ing to provide him a safe place to perform that piece of work.

"It is the rule," says Chief Justice Brantly, "recognized [2] by the courts everywhere that, in order for plaintiff to recover for personal injuries suffered by reason of a breach of duty owed to him by defendant, it is indispensably necessary that he allege facts and circumstances disclosing such breach of duty, and also establish by his evidence that it was the proximate cause of his injury. (*Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Bracey* v. *Northwestern Imp. Co.*, 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706; 4 Labatt on Master & Servant, sec. 1570.)" (*Nelson* v. *Northern Pac. Ry. Co.*, 50 Mont. 516, 526, 148 Pac. 388, 390.)

No amount of sympathy for the dependents of the unfortunate victim can be permitted to affect the application of this well-established principle to the facts as they are here presented.

The judgment is therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, HOLLOWAY and GALEN concur.

